PEOPLE *v.* McINTOSH

1. Automobiles—Stop Sign—Intersection.

   The driver of a vehicle approaching a stop intersection indicated by a stop sign that has no crosswalk or clearly marked stop line shall stop at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway (MCLA § 257.649[f]).

2. Automobiles—Stop Sign—Intersection.

   Driver of an automobile did not stop as required by statute at the point *nearest* an intersection where he stopped five feet from a stop sign which was placed 55 feet from the intersection even though his view from the place of stopping was unobstructed (MCLA § 257.649[f]).

3. Automobiles—Stop Sign—Intersection.

   A stop sign serves only to notify motorists of the approaching highway intersection and does not signify the exact spot at which vehicles are required to stop where it is placed a considerable distance from the stop intersection.

4. Automobiles—Stop Sign—Placement of Sign—Warning.

   Placement of stop signs some distance from an intersection of a servient and dominant highway gives the motorist ample time to slow down and stop before entering the intersection, and provides the necessary warning of an impending danger.

5. Criminal Law — Traffic Violation — Stop Sign — Failure to Stop — Question of Fact.

   Whether a driver stopped his motor vehicle in obedience to a stop sign within a fair range of points all of which might be found nearest the intersection is a question of fact, a finding of which cannot be reversed unless it is clearly erroneous (MCLA § 257.649[f]; GCR 1963, 517.1).

---

Reference for Points in Headnotes

[1–6] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 196, 750, 751.

6. Automobiles—Stop Sign—Intersection.

> A motorist should be required to approach as near as possible to the intersecting roadway before stopping as required by a stop sign, because this assures the driver a shorter time after starting to attain a position of safety, and it enables those approaching on a favored traffic lane to observe the vehicle about to enter the intersection; therefore stopping near an intersection, even where his view is unobstructed, is not enough (MCLA § 257.649[f]).

Appeal from Macomb, Howard R. Carroll, J. Submitted Division 2 March 6, 1970, at Lansing. (Docket No. 7,112.) Decided April 28, 1970.

Roderic C. McIntosh was convicted of failing to stop his motor vehicle at a stop sign. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Steven F. Osinski,* Assistant Prosecuting Attorney, for the people.

*John H. Cresswell,* for defendant.

Before: J. H. Gillis, P. J., and Danhof and O'Hara,* JJ.

J. H. Gillis, P. J. On February 18, 1968, defendant Roderic C. McIntosh allegedly ran a stop sign located at the intersection of Maeder Street and Shelby Road in Macomb County, Michigan. Maeder Street runs east-west and its eastern terminus intersects Shelby Road. Shelby runs north-south. The stop sign is on Maeder, approximately 55 feet

---

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

west of the intersection. There is neither a crosswalk nor a stop line at the intersection.

Defendant was issued a traffic ticket and charged with violating MCLA § 257.649(f) [Stat Ann 1968 Rev § 9.2349(f)], which provides:

"Except when directed to proceed by a police officer, *the driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop* before entering the crosswalk on the near side of the intersection, or if there is no crosswalk shall stop at a clearly marked stop line, or if none, then *at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway.*" (Emphasis supplied.)

Defendant was tried before the Macomb County Circuit Court, sitting without a jury, and convicted as charged. On appeal, the sole issue is whether defendant complied with the statute. Specifically, defendant contends that his conduct on the morning of February 18, 1968, constituted compliance with the above-quoted provision of the Michigan Vehicle Code.

At the conclusion of trial, the trial court found the following facts from the testimony presented. The court accepted as true the defendant's testimony that he "stopped" five feet from the stop sign.** In that position, the defendant's view of approaching traffic on the intersecting roadway, Shelby Road, was unobstructed, but he was not at the point *nearest* the intersection where his view was unobstructed. Thereafter, defendant proceeded east

---

** The record discloses that on the morning of the alleged offense defendant had parked his car in front of his residence, five feet from the stop sign, turned off its headlights, and had remained in that position for some five and six minutes while waiting for his wife to return from a party the couple had attended earlier. Upon seeing his wife in an approaching police car, defendant proceeded to the intersection and turned right without stopping.

on Maeder and, without stopping, turned right at the intersection. The trial court also found as a fact that "[defendant] did not stop at a point nearest the intersecting highway where he could see." (Emphasis supplied.) The court concluded:

"Now, where is he required to stop? Well, the statute is very clear on that * * *. The defendant here, *even though the stop sign is 55 feet back,* was required to stop where the statute says * * * *the driver is required by the motor vehicle code to stop at that particular point nearest the road* and that's where he had to stop." (Emphasis supplied.)

The substance of defendant's argument on appeal is that the trial court erroneously interpreted the statute.

We think the trial court correctly rejected defendant's contention that the statute required defendant to stop at the stop sign itself. Such a construction presupposes that the sign in question was placed by engineers at the point nearest the intersection where the driver has a view of traffic approaching on the intersecting highway. That is obviously not so. Compare, *Cresse* v. *Parsekian* (1963), 81 NJ Super 536, 544 (196 A2d 256, 260). Furthermore, photographs introduced at trial reveal that the stop sign on Maeder Street was not placed at the point nearest the intersection where a driver has a view of Shelby traffic.

Where, as here, a stop sign is placed a considerable distance from the stop intersection, it is generally recognized that the sign serves only to notify motorists of the approaching highway intersection. It does not signify the exact spot at which vehicles are required to stop. See 7 Am Jur 2d, Automobiles and Highway Traffic, § 196, p 747; *Hamilton* v. *Cadwell* (1938), 195 Wash 683 (81 P2d 815); *People* v. *Ubertini* (1943), 182 Mich 634 (51 NYS2d 62);

*Carpenter* v. *Snipes* (1950), 203 Okla 534 (223 P2d 761); *Clifton* v. *Turner* (1962), 257 NC 92 (125 SE 2d 339). Placement of the sign some distance from the intersection of a servient and dominant highway gives the motorist ample time to slow down and stop before entering the intersection. It provides a necessary warning of impending danger.

Defendant also suggests that he substantially complied with the statute. Defendant concedes that he failed to stop at the point *nearest* the intersection where his view was unobstructed. We are told, nevertheless, that distance is not controlling. We quote from defendant's brief.

"It is not the distance from the intersection but whether or not the view was unobstructed. If the point at which the operator stops is near the intersection and the view is unobstructed and will remain unobstructed, then the operator has complied with the statute."

In support of his construction of the statute, defendant cites *Anderson* v. *Detroit Motorbus Co.* (1927), 239 Mich 390. In that case, a motorist stopped his car 40 feet from an intersection at a point adjacent to the stop sign. He then proceeded to enter the intersection without stopping again. Whether the motorist's failure to stop at the intersection violated an ordinance of Grosse Pointe Park was an issue presented. The ordinance made it unlawful "for any driver or operator of any vehicle to enter or cross any through traffic street without first having come to a complete stop before entering or crossing said street." The Court noted, "we are inclined to the belief that when one stops his car opposite the traffic sign he has substantially complied with the ordinance." 239 Mich at p 393.

We think *Anderson* is distinguishable. Nothing in the ordinance designated where, in relation to the

through traffic street, the stop was to be made. It required only that the driver stop. Here, however, the statute in question is quite explicit. It fixes the very spot at which a driver must stop. And,

"Where an applicable statute or ordinance designates specifically where the stop should be made, it is, of course controlling." 3 ALR3d 180, 215.

*Accord,* 60A CJS, Motor Vehicles, § 359(1)c, p 533; 7 Am Jur 2d, Automobiles and Highway Traffic, § 196, p 747. In this case, defendant was not only obliged to stop, he was also required to stop "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway." MCLA § 257.649(f) [Stat Ann 1968 Rev § 9.2349(f)]. This is not to say that there exists a single point at which a driver approaching a stop intersection must stop. Such is not the intent of the statute. He need only stop within a fair range of points all of which might be found "nearest" the intersection. Whether defendant stopped within that range was a question of fact for the trier. That question was resolved against defendant by the trial judge, and we cannot say on the record that his finding is clearly erroneous. GCR 1963, 517.1, 785.1(1). Defendant's conduct therefore constituted a violation of the statute thus construed. *Accord, Walter* v. *State* (1946), 187 Misc 1034 (65 NYS2d 378); *Ketzel* v. *Lazzini* (1949), 163 Pa Super 513 (63 A2d 369); *Muhammad* v. *United States* (CA9, 1966), 366 F2d 298; *cf. Hamilton* v. *Cadwell, supra; People* v. *Ubertini, supra; Greene* v. *M & S Lumber Co.* (1951), 108 Cal App 2d 6 (238 P2d 87); *Miller* v. *Irby* (CA10, 1955), 227 F2d 942; *Nistor* v. *Therkildsen* (1967), 181 Neb 817 (151 NW 2d 443).

Our construction is in accord, we think, with the fundamental rule of statutory interpretation.

"And then the office of all judges is always to make such construction as shall suppress the mischief, advance the remedy, and to suppress subtle invention and evasions for continuance of the mischief." *Heydon's Case* (1584), 2 Co Rep 18 (76 Eng Rept 637).

The obvious purpose of the statute is avoidance of accidents. How is that purpose best served? Defendant contends that it is enough for a driver to stop near an intersection where his view is unobstructed. Several reasons appear to us, however, why a motorist should be required to approach as near as possible to the intersecting roadway where he has a view of approaching traffic. First, such a construction assures the driver a shorter time after starting to attain a position of safety. The requirement also enables those approaching on the favored traffic lane to observe the vehicle about to enter the intersection. Stopping a car at a stop sign some 60 feet from the intersection is little indication of the further intentions of the operator of the stopped car. In short, stopping near an intersection is not enough.

Defendant's conviction is affirmed.

All concurred.