PEOPLE v. HESTER

1. FORGERY—UTTERING AND PUBLISHING—CREDIT SALES SLIP—INDICT-
MENT AND INFORMATION—CRIMINAL LAW.

> A false credit sales slip is an instrument subject to uttering
> and publishing because it may be characterized as either a
> promissory note for the payment of money or an accountable
> receipt for goods within the meaning of the statute relating
> to instruments subject to forgery, since it is the substance
> of the instrument, as distinguished from its form, which de-
> termines whether it may support a charge of forgery; there-
> fore, the trial court erred in quashing information charging
> the defendant with uttering and publishing a false credit
> sales slip signed by him in connection with a stolen credit
> card which he had purchased (MCLA §§ 750.248, 750.249).

2. FORGERY—UTTERING AND PUBLISHING—CREDIT SALES SLIP—PROM-
ISSORY NOTE—ACCOUNTABLE RECEIPT.

> A false credit sales slip, which the defendant completed and
> signed in connection with a stolen credit card which he had
> purchased, was an instrument capable of affecting the rights
> of others because the slip on its face constituted not only a
> promise to pay money for the goods supposedly delivered but
> also, if genuine, was an accountable receipt for goods because
> it would have operated to create a liability on the part of
> the stolen credit-card owner to pay the amount listed on
> the false credit slip for goods received; consequently, the
> defendant was properly charged with uttering and publishing
> a forged legal instrument (MCLA § 750.249).

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 50 Am Jur 2d, Letters of Credit §§ 40, 41.
    Criminal liability for unauthorized use of credit card.  24 ALR3d
    986.

3. FORGERY — UTTERING AND PUBLISHING — EVIDENCE — MONETARY
LOSS.

Actual monetary loss suffered by a complainant need not be
shown by the people in order to support a charge of uttering
and publishing a forged legal instrument; therefore, the fact
that complainant oil company could charge back any forged
credit slips to defendant oil dealer had no legal significance
because defendant's uttering and publishing of a false credit
slip, knowing it to be false, with intent to defraud the com-
plainant, constituted a crime (MCLA § 750.249).

Appeal from Oakland, William John Beer, J.
Submitted Division 2 November 5, 1969, at Lansing.
(Docket No. 6,802.)   Decided June 23, 1970.

Howard Hester was charged with uttering and
publishing a false credit sales slip.   Information
quashed.   People appeal.   Remanded for trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Thomas G. Plunkett,*
Prosecuting Attorney, and *Dennis Donohue,* Chief
Appellate Counsel, for the people.

*Renne & Welter,* for defendant.

Before: LESINSKI, C. J., and J. H. GILLIS and
V. J. BRENNAN, JJ.

J. H. GILLIS, J.   This is an uttering and publish-
ing case.   MCLA § 750.249 (Stat Ann 1962 Rev § 28-
.446).   The information charged that on May 16,
1967, defendant Hester did utter and publish as
true a forged legal document, to-wit:   a credit sales
slip, knowing the same to be false, with intent to
injure or defraud.

The credit sales slip set forth in the information
bears the emblem of the Standard Oil Company and

is entitled, "Original Invoice: This is a credit sale."
An impression of a Standard Oil Company credit
card in the name of one J. E. Mayberry appears on
the slip, as well as an impression of the servicing
Standard station, one "H. Hester 9672–2, Farming-
ton, Mich." A work order number for services
rendered appears on the credit slip; the total charge
is listed as $163.72. The slip is purportedly signed
by J. E. Mayberry.

Testimony adduced at the preliminary examina-
tion tended to show that defendant Hester had pur-
chased a stolen credit card in the name of J. E.
Mayberry from one Robert McCamy. Thereafter,
according to the testimony of Craig Richardson, an
employee of the Hester station, Hester filled out a
false work order for new tires, shock absorbers, and
labor in the amount of $163.72. Hester instructed
Richardson to sign the work order, although no such
services had been rendered. Using the stolen credit
card, Hester then completed the credit sales slip
described above. The false credit slip was sub-
sequently processed through the ordinary course of
business until it reached Standard Oil.

Following preliminary examination, defendant
was bound over to circuit court for trial. A motion
to quash the information was filed by defense
counsel, which the court granted on the basis that
"the defendant may not be held to account under
the statute or statutes under which the people com-
menced this suit for 'uttering and publishing' a
'credit card.'" We granted the people leave to
appeal.

Both parties agree that the question for decision
is this:

"Whether a prosecution for uttering and publish-
ing can be sustained under MCLA § 750.249 (Stat

Ann 1962 Rev § 28.446) when the document concerned is a credit sales slip."

Those instruments subject to unlawful uttering and publishing appear in MCLA § 750.249 (Stat Ann 1962 Rev § 28.446) as "any * * * deed, instrument or other writing mentioned in the preceding section." The preceding section,[1] the forgery statute, enumerates those instruments subject to being forged. If, as the people contend, the credit sales slip set forth in the information is within any class of instruments subject to forgery, it necessarily follows that the credit slip is an instrument subject to uttering and publishing.

Among those instruments subject to forgery listed in the forgery statute are (1) promissory notes for the payment of money and (2) accountable receipts for goods. We are of the view that the credit sales slip involved in the instant case may be characterized as either a promissory note or an accountable receipt for goods within the meaning of the forgery statute. In so characterizing the instrument, we are guided by the following considerations.

"The crime of forgery has been extended by statute, and to a considerable extent by judicial construction, until it covers nearly every class of instruments known to the law as affecting private or public rights. Generally, however, *the substance of the instrument as distinguished from its form is determinative of whether it may support a charge of forgery.*

\* \* \*

"*The question most often arising on the character of the instrument relates not so much to the matter of the generic classification as to the more specific inquiry whether the instrument imports or embodies*

---

[1] MCLA § 750.248 (Stat Ann 1962 Rev § 28.445).

*some one or more of the other elements of the crime,* especially falsity and, on the assumption of genuineness, efficacy to affect the rights of others." 36 Am Jur 2d, Forgery, § 27, pp 696, 697. (Emphasis supplied.)

Whether a credit sales slip signed in connection with the use of an oil company's credit card is subject to being forged is *res nova* in Michigan. Considerable case law exists elsewhere, however. An annotation entitled, "Signing credit charge or credit sales slip, as forgery", 90 ALR2d 822, indicates that "the authorities are in agreement that a credit charge or credit sales slip may be the subject of forgery". *Id.* The leading case so holding is *People v. Searcy* (1962), 199 Cal App 2d 740 (18 Cal Rptr 779, 90 ALR2d 814).

In *Searcy,* the defendant used stolen credit cards to obtain gasoline and tires at various service stations. He signed credit sales slips in the name of John Hennessy from whom the cards had been stolen. On appeal from his conviction for forgery, defendant Searcy argued that a credit sales slip was not the subject of forgery; that it was a *nudum pactum.* The Court responded:

"Signing a credit sales slip constitutes *an implied promise to pay for the merchandise described on the slip.* The delivery of the merchandise (in this case, the gasoline and tires) is the consideration for the implied promise * * * [T]he false signing of the implied promise to pay therefor is forgery.

\*     \*     \*

"Nor is a charge slip of the kind here a mere 'invoice.' It is the primary evidence of the delivery and as we have said carries an implied promise to pay for the goods delivered. The amount shown thereon, when the signature is genuine, is charged against the holder of the credit card. These con-

siderations are not in line with either a *nudum pactum* or an invoice." 199 Cal App 2d at 743, 744 (18 Cal Rptr at 781, 782). (Emphasis supplied.)

In the present case, that the credit slip constitutes a promise to pay money for the goods supposedly delivered, is evident from the face of the slip itself. The credit slip provides:

"Customer agrees to pay American Oil Company upon receipt of statement for all purchases \* \* \* ."

It is also evident from the face of the instrument set forth in the information that, if genuine, it constitutes an accountable receipt for goods. Accord, *McDuffy* v. *State* (1969), 6 Md App 537 (252 A2d 270). The forged instrument purports to be the act of J. E. Mayberry. If the credit slip had been genuine, it would have operated to create a liability on the part of Mayberry to pay the amount listed for goods received. *Cf. People* v. *Parmelee* (1944), 309 Mich 431.

As in *People* v. *Searcy, supra,* we reject the suggestion of defendant Hester that the credit slip here at issue is a "mere memorandum of agreement". In his brief, defendant contends that a credit sales slip is "a *nudum pactum*—a thing which could not be declared on or enforced in any way", quoting *People* v. *Parker* (1897), 114 Mich 442, 446. *Parker* is distinguishable, however. For, unlike the situation in *Parker,* it is quite apparent how the instrument in question could injure someone. Compare *People* v. *Parker, supra,* at 445.

The evidence at the preliminary examination established that Hester used the forged credit slip as payment for gasoline delivered to his station by Standard Oil. On the assumption of genuineness, the instrument was thus capable of affecting the

rights of others. See *People* v. *Palmer* (1901), 127 Mich 383, 384; 36 Am Jur 2d, Forgery, § 27, p 697. Moreover, absent discovery of Hester's fraud, the instrument's use would have effectuated the very evil sought to be corrected.

We decline to embrace defendant's characterization of the instrument involved. To do so would promote, rather than eliminate, the evils of fraud. Such is not our function.

"The words of a penal statute must be read in the light of the evil sought to be corrected, *Hightower* v. *Detroit Edison Co.* (1933), 262 Mich 1, and to effect the objects of the law. CL 1948, § 750.2 (Stat Ann 1962 Rev § 28.192)." *People* v. *Johnnie W. Jones* (1968), 12 Mich App 293, 295.

*Cf. People* v. *Phillips* (1898), 118 Mich 699; and see, *People* v. *Goolsby* (1938), 284 Mich 375; *People* v. *McIntosh* (1970), 23 Mich App 412.

Nor are we persuaded that Standard's rights under its agency contract with defendant Hester are of any legal significance. Defendant contends that since Standard could charge back any forged credit slips to its dealers, it could suffer no actual loss; and, as a result, there could be no crime of uttering and publishing. Contrary to defendant's position, however, it is well established that the people need not show an actual monetary loss suffered by Standard in order to support the charged offense.

"It was urged by the counsel for the plaintiffs in error, that the facts show an incomplete uttering, and that, therefore, the offense charged, was not made out; *that to constitute an uttering and publishing, it was necessary that the defendant below, Jones, should have parted with the draft for value,* or put it in circulation. This proposition cannot, I think, be supported either upon principle or

authority. We must intend, from the verdict of the jury, that Jones knew that the draft was a forgery; by presenting it to the bank officers he asserted its genuineness; by demanding its payment he did all that was necessary to constitute an uttering within the meaning of the statute. That the payment of the draft was refused, and subsequently re-delivered to Jones, in no respect affects the transaction. If the draft had been actually paid, it is admitted that the offense would have been complete. Can it make any difference in reason or morals, that it was not paid? It seems to me not. Jones did all that could have been done to accomplish his illegal purpose; that he was foiled in the attempt to perpetrate a gross fraud, does not help his case." *People* v. *Brigham* (1853), 2 Mich 550, 551, 552. (Emphasis supplied.)

Accord, *People* v. *Caton* (1872), 25 Mich 388; see also, *People* v. *Dombrowski* (1968), 10 Mich App 445, note 1 at 447.

To summarize: We hold that the instrument set forth in the information is one enumerated in the statute under which defendant was charged and that a credit sales slip may be made the subject of forgery. Accord, *People, ex rel Arter,* v. *Foster* (1951), 199 Misc 900 (104 NYS2d 39); *Benefield* v. *State* (Okla Crim, 1960), 355 P2d 874; *Shriver* v. *Graham* (Okla Crim, 1961), 366 P2d 774; *Vannerson* v. *State* (Tex Crim, 1966), 403 SW2d 791; *State* v. *Vangen* (1967), 72 Wash 2d 548 (433 P2d 691); *McCrory* v. *State* (Miss, 1968), 210 So 2d 877; *People* v. *Liberto* (1969), 274 Ad Cal App 501 (79 Cal Rptr 306); *State* v. *Devenow* (1969), 253 La 796 (220 So 2d 78); *McDuffy* v. *State, supra; People* v. *Searcy, supra.* Uttering and publishing such a slip, knowing the same to be false, with intent to defraud constitutes a crime.

Accordingly, we reverse the order of circuit court quashing the information and remand for proceedings consistent with this opinion.[2]

All concurred.

___

[2] We intimate no opinion on the applicability of PA 1967, No 255, effective November 2, 1967 (MCLA § 750.157m *et seq.* [Stat Ann 1969 Cum Supp § 28.354(13) *et seq.*]), to the facts of this case. The crime in this case allegedly took place on May 16, 1967; it therefore antedated PA 1967, No 255. Whether a prosecution for uttering and publishing a false credit slip remains cognizable after November 2, 1967 is a question we need not decide. Compare, *Shriver* v. *Graham* (Okla Crim, 1961), 366 P2d 774; *Vannerson* v. *State* (Tex Crim, 1966), 403 SW2d 791; *McCrory* v. *State* (Miss, 1968), 210 So 2d 877; *People* v. *Liberto* (1969), 274 Ad Cal App 501 (79 Cal Rptr 306); *McDuffy* v. *State* (1969), 6 Md App 537 (252 A2d 270).