PEOPLE v KIMBLE

1. Forgery—Uttering and Publishing—Elements of Offense.

The crime of uttering and publishing an instrument is established by proof that (1) the accused knew that the instrument was false, (2) the accused had an intent to defraud, and (3) the forged instrument was presented for payment; it is not necessary that an innocent recipient of a forged document make payment to complete the crime.

2. Criminal Law—Guilty Knowledge—Specific Intent—Inferences.

Guilty knowledge and specific intent are most often not susceptible of proof by direct testimony and, by their very nature, must in most instances be inferred from other facts.

3. Forgery—Evidence—Uttering and Publishing—Guilty Knowledge—Intent to Defraud.

Intent is a state of mind which may be inferred from facts and circumstances established beyond a reasonable doubt; therefore, sufficient evidence was presented to submit the questions of guilty knowledge and intent to defraud to the jury in a prosecution for uttering and publishing where it was shown that the defendant was in the complainant's office shortly before some of the complainant's checks were found to be missing and there was testimony that the signature on one of those checks, which the defendant attempted to pass, was not genuine.

4. Forgery—Uttering and Publishing—Presentment—Evidence.

Testimony by a bank teller and the bank manager that a defendant had presented a check to another bank teller, who did not testify at trial, and expert testimony that the defendant's

References for Points in Headnotes

[1–4] 36 Am Jur 2d, Forgery §§ 44–46, 48.

Presumptions and inferences in criminal cases from unexplained possession or uttering of forged paper. 164 ALR 621.

[5, 6] 21 Am Jur 2d, Criminal Law § 251.

29 Am Jur 2d, Evidence §§ 180, 186.

58 Am Jur, Witnesses § 3.

fingerprints were on the check in question, was sufficient to submit to the jury the question of whether the defendant had presented the check for payment, even without the testimony of the teller to whom he allegedly presented it.

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—DUE DILIGENCE—GOOD FAITH—OUT-OF-STATE WITNESS.

The prosecution must show the exertion of due diligence in an effort to produce a res gestae witness at trial in order for the witness to be properly excused; the prosecution's efforts are measured by its good faith, and where the witness is outside the state statutory procedures must be invoked to procure the witness's attendance.

6. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—FAILURE TO PRODUCE—REMAND—EVIDENTIARY HEARING.

A case in which a res gestae witness was indorsed but was not produced by the prosecution at trial without a showing that any effort had been made to produce the witness, where the evidence was sufficient to submit the case to the jury on the questions of the elements of the offense charged, is an appropriate one for remand for a hearing at which the prosecutor will be required to produce, or explain why he cannot produce, the witness, and at which the witness is to be examined regarding her knowledge of the crime and the trial court shall make an appropriate order either that a new trial is mandated, or if not, the results of the hearing are to be forwarded to the Court of Appeals for final disposition of the cause.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 March 5, 1975, at Grand Rapids. (Docket No. 20286.) Decided April 25, 1975.

Walter R. Kimble, Jr. was convicted of uttering and publishing a forged instrument. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston III,* Chief Appellate Attorney, and *Craig S. Neckers,* Assistant Appellate Attorney, for the people.

*Murphy, Neff, Burns & McInerney,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and BRONSON and M. J. KELLY, JJ.

D. E. HOLBROOK, P. J. Defendant was convicted by a jury of the crime of uttering and publishing a forged instrument, contrary to MCLA 750.249; MSA 28.446. On February 25, 1974, defendant was sentenced to a term of from 3 to 14 years in prison, and now appeals his conviction as of right.

The facts adduced at trial and necessary to a decision show that on July 3, 1973, two males, one of whom was identified at trial as the defendant, came into attorney William Azkoul's office to make an appointment. Karen Hershberger, a secretary, spoke with the defendant and made the necessary arrangements for the appointment. To do so, she had to leave the area where defendant was located. After the appointment was made, the defendant left the office. Miss Hershberger then left for lunch and Judy Quam replaced her in the office. In a short time defendant returned to the office and requested a change in his appointment. In order to make the new appointment Miss Quam left the area for a few moments. While she was away, Miss Quam heard what she described as a thump, as if someone had kicked a chair. When she returned she saw the defendant and his companion closing a shopping bag. Within two hours of the second appearance of the defendant it was discovered that several checks were missing from Mr. Azkoul's check book which had been in plain view on the desk where the secretaries had been working and close to where defendant had been standing when making the appointment. At that time, the Central Bank was notified of the theft

and those in charge at the bank notified its employees to be on the lookout for these checks.

About an hour later, a man positively identified as the defendant walked into the Plainfield Branch of the Central Bank and attempted to pass one of these checks. The teller (who was a listed res gestae witness on the information) to whom the check was presented notified her supervisor, who in turn took down certain information from a temporary driver's license which defendant had supplied. The defendant was then informed that the check had been stolen and that it would have to remain at the bank. Upon being so informed the defendant left the bank and walked to a waiting car. The branch manager of the bank followed the defendant and obtained the license number of the car in which defendant was riding. A fingerprint expert testified that defendant's fingerprints were on the check.

The defendant testified and denied any connection with the crime. He asserted that he had spent the afternoon in question at a girl friend's house in Grand Rapids, that while there three men came in, started talking about how much money they had and produced some checks which defendant picked up. He claimed that must have been the reason why his fingerprints were on the one check.

Defendant raises two issues on appeal.

I

*Was the evidence sufficient to sustain a conviction for uttering and publishing a forged instrument?*

Defendant claims that because Edrita Roth did not testify at the trial, no one was able to testify regarding an essential element of the crime, *i.e.,*

"uttering and publishing as true". There was a lack of testimony at trial showing facts that defendant had guilty knowledge that the check was forged, or that he had an intent to defraud, both being asserted elements of the offense.

The elements of the crime of uttering and publishing are stated in the case of *People v Brandon,* 46 Mich App 484, 491–492; 208 NW2d 214, 217–218 (1973), as follows:

> "The law of this jurisdiction provides that the crime of uttering and publishing is established by proof that (1) the accused knew that the instrument was false, (2) the accused had an intent to defraud, and (3) the forged instrument was *presented* for payment. *People v Brigham,* 2 Mich 550 (1853); *People v Dombrowski,* 10 Mich App 445; 159 NW2d 336 (1968); *People v Hester,* 24 Mich App 475; 180 NW2d 360 (1970). It is the act of presenting a forged instrument for payment which creates the commission of a crime proscribed by the statute. Accordingly, it is not necessary that an innocent recipient of a forged document make payment to complete the crime." (Emphasis in original.) (Footnotes omitted.)

The pertinent evidence on the question of guilty knowledge in the record shows that defendant was present in Mr. Azkoul's office on two separate occasions on July 3, 1973. Shortly after defendant left the office, some of Mr. Azkoul's checks were found to be missing. There was also testimony that the signature on the check in question was not genuine. Guilty knowledge, like specific intent, is most often not susceptible of proof by direct testimony; by their very nature, both elements must in most instances be inferred from other facts. *People v Henderson,* 45 Mich App 511; 206 NW2d 771 (1973); *aff'd,* 391 Mich 612; 218 NW2d 2 (1974). We rule that the facts in the case were sufficient to

establish that defendant knew that the check in question was false.

As to defendant's intent to defraud, in *People v Phillips,* 385 Mich 30, 37; 187 NW2d 211, 214 (1971), it is stated that: "Intent is a state of mind which may be inferred from facts and circumstances established beyond a reasonable doubt." The same facts used in establishing guilty knowledge are also applicable in establishing an intent to defraud. Therefore, there was evidence of both guilty knowledge and intent on the part of defendant to defraud present in this case.

We rule that there was sufficient evidence produced to submit the issue concerning the first two elements of the crime to the jury. *People v Grace,* 50 Mich App 604; 213 NW2d 853 (1973), *People v Cunningham,* 20 Mich App 699; 174 NW2d 599 (1969), and *People v Ballenberger,* 51 Mich App 353; 214 NW2d 742 (1974).

We must now determine if there was a sufficiency of evidence produced to prove presentment. The crux of defendant's argument is that Edrita Roth's testimony was essential to prove that defendant presented the check because she was the teller to whom defendant was claimed to have presented the check. In her absence presentment could not be proved.

However, there was evidence by both another teller and by the bank manager that defendant had presented the check to Edrita Roth. There was also testimony that defendant's fingerprints were on the check in question, notwithstanding defendant's testimony that he had been shown checks at his girl friend's house by others and had handled some of the checks at that time, thus explaining his fingerprints on the check.

We rule that even without the testimony of

Edrita Roth, there was sufficient evidence produced to submit to the jury the issue of presentment, the third element of the crime.

## II

*Is it reversible error, requiring a new trial, where the people fail to produce at trial, or to satisfactorily explain the absence of a res gestae witness who had been indorsed on the information?*

Defendant asserts that Edrita Roth was the bank teller who the people claim received the forged instrument from the defendant. She was an indorsed res gestae witness but was not produced at trial. Further, the people failed to show on the record that "due diligence" was exercised in its effort to produce her at trial.

The general rule in Michigan is that an indorsed res gestae witness must be produced unless excused. In *People v Koehler,* 54 Mich App 624, 637–638; 221 NW2d 398, 405 (1974), our Court stated there are four exceptions to the general rule requiring production of res gestae witnesses at trial, *viz.:*

1. When the prosecution shows due diligence in attempting to produce the witness.

2. When the testimony of the missing res gestae witness would be merely cumulative.

3. When the witness was a participant in the crime.

4. When the identity of the res gestae witness is made known to the defendant during trial, or even before, and defendant does not move for the indorsement or production of the witness.

The third exception is obviously not applicable, and the fourth exception has been modified, but

applying it as written it is not applicable because the exception only applies to a previously unindorsed witness. The second exception should not be applied since there was no evidence that Mrs. Roth's testimony would be merely cumulative. It is probable that the defendant may have said something to her that only she could have heard and which might have a bearing on guilty knowledge or intent.

It is stated in the case of *People v Johnson,* 51 Mich App 224, 230–231; 214 NW2d 713, 716 (1974), that in order for a res gestae witness to be properly excused, it must be shown by the people that "due diligence" had been exerted in an effort to produce the witness at trial. Due diligence was therein defined as requiring devoted and painstaking application to accomplish an undertaking. Our Court in the case of *People v Eugene Harris,* 43 Mich App 531, 537; 204 NW2d 549, 553 (1972), commented that recent rulings of the Court of Appeals would measure the prosecution's efforts to produce a res gestae witness by its "good faith". Also, where the witness is outside the state, statutory procedures must be invoked to procure the witness's attendance. *People v Harrison,* 44 Mich App 578, 599; 205 NW2d 900, 912 (1973).

In the instant case there was testimony that Mrs. Roth was living in Seattle, Washington, at the time of the trial. The people admit they did not produce Mrs. Roth at trial but assert that every failure to exercise due diligence to produce a res gestae witness does not require reversal, and cites the case of *People v Cornell Harris,* 56 Mich App 267; 224 NW2d 57 (1974), in support thereof. Even so, the people in this case made no showing of any effort to produce Mrs. Roth at trial. Mrs. Roth was listed on the information as a res gestae

witness and defendant had the right to rely on the people producing her at the trial for cross-examination, unless properly excused by the court.

Defendant brought to the attention of the court the apparent absence of Mrs. Roth and moved for dismissal of the action based on the lack of competent evidence and the best evidence.

We determine that this case is an appropriate one to remand in accord with the ruling in *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), in order to prevent what might possibly be a useless new trial, but also in order to avoid a possible miscarriage of justice. It shall be the obligation of the trial judge to require the prosecutor to produce or explain why he cannot produce Edrita Roth at such hearing, and why she was not produced at trial. If Mrs. Roth is produced she shall be examined regarding her knowledge of the crime of which defendant was convicted.

At the conclusion of the remand hearing, the trial judge shall make an appropriate order as he deems proper. If a new trial is not ordered, the trial judge shall state his findings, and the transcript of that hearing and the judge's statement shall be forwarded to this Court. Defendant may file a supplemental brief within 20 days and the people within 10 days after receipt of defendant's brief.

We remand in accord with GCR 1963, 820.1(5), and retain jurisdiction. The final disposition of this cause is held in abeyance. If the trial judge finds that a new trial is required, this Court will enter an order consistent with that determination. Otherwise, the Court will consider the case after the proceedings called for herein are completed, and briefs filed as ordered, for a final determination of the entire matter by this Court.

Remanded.