## PEOPLE v BUCHANAN

Docket No. 49825. Submitted November 18, 1980, at Grand Rapids.— Decided July 8, 1981.

Ricky Buchanan was convicted at a bench trial in Muskegon Circuit Court of uttering and publishing a forged instrument and was sentenced, R. Max Daniels, J. Defendant appeals, contending that there was insufficient evidence to allow the trier of fact to conclude that defendant was guilty of uttering and publishing a forged instrument. *Held:*

The trial court erred by applying the wrong standard of evidence for a motion for a directed verdict of acquittal; however, reversal of the trial court's ruling is not required unless the prosecution's evidence was insufficient to justify a reasonable factfinder in concluding that all of the essential elements of the crime were proven beyond a reasonable doubt. There was sufficient evidence introduced to allow the trial court to conclude that defendant was a knowing participant in the crime and it cannot be said that the trial court's finding of fact of defendant's identity as the perpetrator of the crime was clearly erroneous. There was sufficient evidence of each element of the crime to justify the trial court's finding of guilt.

Affirmed.

1. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

A court, when ruling on a motion for a directed verdict of acquittal, must consider the evidence which had been presented by the prosecution up to the time the motion was made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 548, 552.
[2] 75 Am Jur 2d, Trial § 551.
[3] 36 Am Jur 2d, Forgery § 20.
[4, 5] 21A Am Jur 2d, Criminal Law §§ 802, 803.
[6] 36 Am Jur 2d, Forgery §§ 17, 18.
Falsifying of money order as forgery. 65 ALR3d 1307.

2. APPEAL — CRIMINAL LAW — DIRECTED VERDICT.

It is error for a trial court to apply the wrong standard of evidence when ruling on a criminal defendant's motion for a directed verdict of acquittal where denial of the motion results; however, reversal is not required unless the prosecution's evidence was insufficient to justify a reasonable factfinder in concluding that all of the essential elements of the crime were proven beyond a reasonable doubt.

3. FORGERY — UTTERING AND PUBLISHING.

The elements of the crime of uttering and publishing a forged instrument are: 1) knowledge that the instrument was false; 2) intent to defraud; and 3) presentation of the forged instrument for payment.

4. CRIMINAL LAW — PRETRIAL LINEUPS.

A criminal defendant has no constitutional or statutory right to a pretrial lineup.

5. CRIMINAL LAW — PRETRIAL PROCEDURE — PRETRIAL LINEUP.

It is within a trial court's discretion to grant or deny a criminal defendant's request for a pretrial lineup.

6. FORGERY — PERSONAL MONEY ORDERS.

A personal money order is equivalent to a personal check and is capable of being forged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald D. Warner,* Prosecuting Attorney, for the people.

*William C. Marietti,* for defendant on appeal.

Before: MACKENZIE, P.J., and T. M. BURNS and BASHARA, JJ.

MACKENZIE, P.J. On December 4, 1979, defendant was convicted at a bench trial of uttering and publishing a forged instrument, MCL 750.249; MSA 28.446. He was sentenced to a term of 4 to 14 years imprisonment and appeals as of right.

Defendant is correct in his assertion that the trial court erred in applying the "scintilla" or "any evidence" test to defendant's motion for a

directed verdict of acquittal. The proper standard, announced by the Michigan Supreme Court shortly before the trial herein in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), provides:

"In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made *[People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt *[Jackson v Virginia,* 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979)]."

However, reversal is not required unless the prosecution's evidence was insufficient to justify a reasonable factfinder in concluding that all of the essential elements of the crime were proven beyond a reasonable doubt. The evidence showed that on May 26, 1979, a man asked June Pitts, an employee of Hasper's Sav-Mor Market in Muskegon, to prepare a money order for $200. Ms. Pitts, after getting instructions and approval from her boss, Gary Hasper, prepared the money order and placed it on the counter in front of her. Ms. Pitts testified that the man took the money order and handed her a wad of bills totalling only $160 or $170. She said she returned the money and demanded the money order back. At that point, the man handed her an envelope containing a money order in the amount of $1 which Ms. Pitts said she had prepared earlier that day. When she demanded that the $200 money order be returned, Ms. Pitts said the man said he did not have it.

After arguing with her and Mr. Hasper, the man left.

Ms. Pitts had not identified defendant prior to trial. She participated in one photographic showup before defendant was a suspect and tentatively identified the photograph of defendant's girlfriend's brother, Terry Jennings. Ms. Pitts first saw defendant sitting with his attorney in a conference room prior to the preliminary examination. Nevertheless, Ms. Pitts positively identified defendant at the preliminary examination and at trial.

Gary Hasper's testimony essentially corroborated Ms. Pitts' version of the episode. He said that after the man left the store, he called Consumer's Money Order Corporation, the issuer of the money order, and stopped payment on it. Mr. Hasper had not participated at any pretrial identification procedures except that he did identify defendant seated at the defense table at the preliminary examination. He was in court when Ms. Pitts identified defendant at the preliminary examination.

Charles Hopkins, proprietor of Mr. Brother Man's clothing store in the Muskegon Mall, testified that, at approximately 4 p.m. that same day, defendant, who was known personally by Hopkins, and a female companion purchased some merchandise from his store. Defendant's companion, later identified as Sandra Jennings, extracted a $200 money order from her purse and gave it to defendant who presented it to Hopkins. The money order was payable to "Sandra Jennings, signed Dale Taylor".

The stolen money order was indorsed by both Jennings and defendant in the presence of Mr. Hopkins. The money order, received as an exhibit,

was shown to have the same identification number, 59-573912, as the receipt held by Hasper which was also introduced into evidence. Hopkins testified at trial that defendant told him later that he had received the money order in a short-changing scheme. On cross-examination, Hopkins testified that he had not mentioned the short-changing scheme at the preliminary examination but that he had testified that defendant "said he purchased it on old—the Old White—old U.S. 31, like going to Dalton".

Sandra Jennings testified that she purchased a suit for defendant from Mr. Brother Man's on the day in question but denied that the money order was stolen. She said she had received it from Dale Taylor in payment for some stereo components she sold him. Defendant's testimony substantially corroborated Jennings' version of the events. He denied going to Hasper's Save-Mor Market that day and intimated that it was a case of mistaken identity.

In *People v Grable,* 95 Mich App 20, 24; 289 NW2d 871 (1980), the elements of the crime of uttering and publishing a forged instrument were set forth as follows:

"(1) knowledge on the part of the accused that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment. *People v Fudge,* 66 Mich App 625, 631; 239 NW2d 686 (1976), *People v Kimble,* 60 Mich App 690, 694; 233 NW2d 26 (1975)."

The first issue is whether the evidence of identification was sufficient to allow the trier of fact, in this case the circuit judge, to conclude that defendant was guilty of uttering and publishing a forged instrument. We note initially that defense counsel

did not request that either Ms. Pitts or Mr. Hasper participate in a pretrial lineup. Although defendant would not have been entitled to a lineup as a matter of right, *People v Mann,* 89 Mich App 511; 280 NW2d 577 (1979), it was within the trial court's discretion to grant or deny such a request. Thus, defense counsel must share the responsibility for the loss of any meaningful lineup evidence. See *People v Emanuel,* 98 Mich App 163, 183; 295 NW2d 875 (1980). Nor did defendant raise the issue of the suggestiveness of the preliminary examination identification procedure by prompt objection or motion to suppress the testimony of Ms. Pitts and Mr. Hasper. See *People v Wilson (On Rehearing),* 96 Mich App 792, 797; 293 NW2d 710 (1980).

Apparently, defense counsel chose, as a matter of trial strategy, to attack the identification testimony of both witnesses by showing that: (1) neither had participated at a pretrial lineup, (2) Ms. Pitts had tentatively identified the brother of defendant's girlfriend in a photographic showup, and (3) Mr. Hasper's testimony was dependent on and tainted by Ms. Pitts' preliminary examination testimony.

We do not find the initial viewing of defendant by Ms. Pitts nor the preliminary examination identification procedure so unnecessarily suggestive as likely to have resulted in irreparable mistaken identification. Both witnesses testified that they had observed defendant for several minutes at a close distance, through the cashier's window. Although Ms. Pitts tentatively identified another man as the person who stole the money order, her identification of him was not positive. More importantly, because defendant's photograph was not in the array, neither Ms. Pitts nor Mr. Hasper ever

failed to identify defendant. Additionally, the evidence of defendant's guilt herein did not depend entirely on the identification testimony of Ms. Pitts and Mr. Hasper. Considering their testimony with the evidence that defendant's signature appeared on the $200 money order, the number of which matched the receipt from Hasper's Market, as well as the testimony of Charles Hopkins, there was sufficient evidence to allow the trial judge to conclude that defendant was a participant in the criminal episode and had knowledge that the money order was stolen. Moreover, as the trial court noted, if Hopkins' testimony is credible, his statements regarding where defendant said he acquired the money order were inconsistent with the claims of defendant and Ms. Jennings that she had acquired it from someone who had purchased her stereo. We cannot say that the trial court's finding of fact of defendant's identity as the perpetrator was clearly erroneous. GCR 1963, 517.1.

Defendant also argues that, although the money order may have been stolen and was subject to a "stop payment" order, it was not "false, forged, altered or counterfeit" as required for a conviction under MCL 750.249; MSA 28.446. In *State v LaRue*, 5 Wash App 299; 487 P2d 255; 65 ALR3d 1299 (1971), the defendant similarly argued that "the writing of another's name on a personal money order cannot constitute forgery because the signature in the space designated 'purchaser's name' has no effect on the validity of the money order". *Id.*, 301.

Although the Washington Court of Appeals found that there was authority under the Uniform Commercial Code for defendant's theory that a personal money order is akin to a bank cashier's check representing the bank's direct obligation to

pay a holder, the Court chose to rely on the reasoning of the New York Appellate Division that a personal money order is equivalent to a personal check and, thus, capable of being forged:

"However, in a later New York case, the holding of *Rose Check Cashing Service, Inc v Chemical Bank NY Trust Co, supra,* was rejected. *Garden Check Cashing Service, Inc v First Nat'l City Bank,* 25 App Div 2d 137; 267 NYS2d 698 (1966). In the ruling, which was affirmed by New York's highest appellate court *[Garden Check Cashing Service, Inc v First Nat'l City Bank* 18 NY2d 941; 277 NYS2d 141; 223 NE2d 566 (1966)], it was held that a personal money order is essentially the equivalent of a personal check. The rationale of the decision is that the drawer (purchaser) of a money order does not purchase the drawee's (the bank's) credit. He merely deposits a sum of money with the drawee against which he may draw by written order. This view of the legal nature of a personal money order finds support in the provisions of the Uniform Commercial Code. A personal money order, in all respects, fulfills the definition of a 'draft' under the provisions of RCW 62A.3-104.

"A 'check' is also a 'draft' if it is drawn on a bank and payable on demand. RCW 62A.3-104.

"A 'draft' is an 'order to pay' but is not an assignment of funds.

" 'A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.'

"RCW 62A.3-409(1).

"An inherent right of the drawer of a draft is the right to stop payment before it had been accepted by the drawee. Here the drawer, the Seattle business establishment from which the money order was stolen, had the right to stop payment before the money order was accepted by the drawee, American Express. The purchaser's magnetic computer processing numbered copy of the money order and American Express' similar copy would provide the means of identifying the money

order which LaRue attempted to cash when it was presented, even though American Express' copy did not identify the purchaser by name." *Id.,* 303-304. (Footnotes omitted.)

We find the reasoning in *LaRue* persuasive and adopt it as applicable to the case at bar. Clearly, the signature of Dale Taylor as the purchaser of the instrument was false or fictitious. Because the evidence supported the trial judge's finding of fact that defendant stole the money order, the inescapable conclusion is that defendant also knew Dale Taylor's signature was fictitious or unauthorized and intended to defraud Mr. Hopkins of $200. We find sufficient evidence of each element of the crime, justifying the trial court's finding of guilt. See *People v Hampton, supra.*

Affirmed.