PEOPLE v EUGENE HARRIS

OPINION OF THE COURT

1. DRUGS AND NARCOTICS—ILLEGAL POSSESSION—EVIDENCE—LICENSE.

Lack of a license is a necessary element of the crime of illegal possession of narcotics and the prosecution has the burden of proving defendant's lack of a license (MCLA 335.153).

2. DRUGS AND NARCOTICS—ILLEGAL POSSESSION—EVIDENCE—LICENSE.

Failure to prove that defendant lacked a license to be in possession of narcotics requires a reversal of his conviction and a remand for a new trial (MCLA 335.153).

3. CRIMINAL LAW—RES GESTAE WITNESS—NONPRODUCTION—DUE DILIGENCE.

The mere issuance of a subpoena for a res gestae witness, without any proof that the subpoena was served, does not constitute due diligence to produce the witness, nor do last minute efforts to locate the witness by sending officers to his home address, by calling the county jail to see whether he is presently incarcerated, and by calling the police identification bureau to determine whether the witness was previously or presently in custody, constitute bona fide use of other means at hand to justify the prosecution's failure to produce the witness.

4. CRIMINAL LAW—RES GESTAE WITNESS—NONPRODUCTION—DUE DILIGENCE—QUESTION OF FACT.

The question of due diligence of the prosecution in attempting to

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 45.
 What constitutes "Possession" of a narcotic drug prescribed by § 2 of the Uniform Narcotic Drug Act, 91 ALR2d 810.
[2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 45.
[3–5] 53 Am Jur, Trial § 469 *et seq.*
[6] 5 Am Jur 2d, Arrest §§ 1, 43.
[7] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45–47.
[8] 5 Am Jur 2d, Arrest § 1.
[9] 5 Am Jur 2d, Arrest § 46.
[10] 53 Am Jur, Trial § 750.
[11, 12] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 21.

produce a res gestae witness is generally decided by the trial judge, but submission of the question to the jury is a proper alternative method if there is sufficient evidence of due diligence to justify submission to the jury.

5. CRIMINAL LAW—RES GESTAE WITNESS—NONPRODUCTION—EVIDENCE.

Absent any evidence to substantiate the people's diligent or good-faith effort to produce the driver of a car in which defendant was arrested, who was the only non-policeman witness, the submission to the jury of the question of the prosecution's due diligence in attempting to produce that res gestae witness constitute reversible error.

6. CRIMINAL LAW—ARREST—INVESTIGATORY STOP.

Statement by police officers as their cruiser pulled alongside the car in which defendant was a passenger that we "would like to talk to you", may have restrained defendant's freedom of movement but did not exceed the permissible bounds of the rule which permits detentions of persons for investigatory purposes where the officers, at the time of the stop, possessed information describing the defendant's involvement in criminal activity, his appearance, and the location where he could be found.

7. DRUGS AND NARCOTICS—INVESTIGATORY STOP—PLAIN VIEW.

Narcotics which defendant threw out of a car window were in "plain view" and were admissible at defendant's trial for illegal possession of narcotics where defendant was properly stopped by police officers for investigation upon a report that he was carrying narcotics.

8. CRIMINAL LAW—ARREST—INVESTIGATORY DETENTION—INTENT.

A police officer's intention is a significant factor in determining whether the particular accosting of a suspect is an arrest; consequently, the officer can be cross-examined at trial with regard to his intention.

9. CRIMINAL LAW—ARREST—INVESTIGATORY DETENTION—INTENT.

Detention of defendant by police officers was a valid investigatory stop, not an arrest, where an anonymous informant had informed police that defendant would be in possession of narcotics at a particular time and place and also described defendant; therefore, cross-examination of the officers about whether their intention in stopping him was to arrest him was properly refused.

10. Criminal Law—Reasonable Doubt—Instructions to Jury.

A jury instruction in a criminal case that reasonable doubt may not be based upon the lack of or unsatisfactory nature of the evidence is erroneous.

11. Drugs and Narcotics—Evidence—Quantity—Usable Amount.

A conviction of the illegal possession of narcotics can be supported if the amount discovered can reasonably be inferred to be a remnant of a larger, usable amount.

12. Drugs and Narcotics—Evidence—Quantity—Usable Amount.

Instructing the jury that any quantity of narcotics was sufficient to support defendant's conviction of illegal possession was not reversible error where the bulk heroin found in his possession was 24 grains, clearly a usable amount.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 June 23, 1972, at Detroit. (Docket No. 13191.) Decided October 26, 1972.

Eugene Harris was convicted of possession of narcotics. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Sidney Kraizman,* for defendant on appeal.

Before: J. H. Gillis, P. J., and McGregor and Bronson, JJ.

Bronson, J. Defendant was convicted by jury verdict of possession of narcotics and sentenced to serve a term of one and one-half to ten years in the state prison. MCLA 335.153; MSA 18.1123. From this conviction defendant appeals, raising six

allegations of error: (1) the prosecution failed to prove lack of license as a necessary element of the offense charged, (2) the prosecution failed to submit sufficient evidence. of due diligence to justify the nonproduction of a res gestae witness, (3) the trial judge refused to suppress a package of heroin as the fruits of an illegal arrest, (4) the trial judge failed to permit defendant's cross-examination upon the police officer's intent to arrest him, (5) the trial judge erroneously instructed the jury that reasonable doubt may not be based upon the lack of, or unsatisfactory nature of, the evidence, and (6) the trial judge erroneously instructed the jury that any quantity of narcotics was sufficient to support a conviction.

On March 5, 1971, the Detroit Police Department received an anonymous telephone call stating that Eugene Harris would be in possession of narcotics. The anonymous call provided the police with a description of Harris and the location from which he would be leaving. Several officers were dispatched to the described location and observed two men, one matching the given description, enter a red car parked near the curb. The officers pulled alongside the red car in an unmarked police vehicle, displayed identification, and announced that they were police officers who "would like to talk to you". While exiting their vehicle, one of the officers observed defendant pick up a foil package from the front seat and throw it out the window. This officer retrieved the package approximately one foot in front of the car and examined its contents. Suspecting it to contain a quantity of narcotics, he arrested defendant. Defendant was subsequently tried for the unlicensed possession of narcotics and found guilty by jury verdict.

I. *Did the prosecution's failure to prove lack of*

*license as a necessary element of the offense charged require a reversal of defendant's conviction?*

Recently the Michigan Supreme Court in *People v Rios,* 386 Mich 172 (1971), held that (1) lack of license was a necessary element of the crime of unlawfully selling narcotics and (2) the burden of proving lack of license fell upon the prosecution. This holding has been extended to cases involving the possession of narcotics. *People v Gould,* 40 Mich App 689 (1972); *People v Maceri,* 39 Mich App 38 (1972); *People v Edwards,* 37 Mich App 490 (1972).[1] The prosecution's admitted failure to prove lack of license requires our reversal.

The remaining question to be answered is whether this error requires an outright reversal of defendant's conviction or a reversal accompanied by a remand for new trial. This Court's disposition of errors based upon *Rios* includes both approaches. The defendant's conviction was reversed without remand in *People v Gould, supra.* Conversely, the defendant's conviction in *People v Edwards, supra,* was reversed and remanded for a new trial. The Supreme Court's disposition evidences similar inconsistency. The defendant's conviction in *People v Rios, supra,* was reversed without direction for remand. However, in subsequent cases whose reversal is based upon *Rios,* the Michigan Supreme Court has specifically directed a remand to the court in which the case originated for a new trial.[2] After considering the various policy considerations involved in the type of error at issue, we follow the Supreme Court's most recent decisions and direct a remand to the De-

[1] See, *e.g., People v Parker,* 31 Mich App 133 (1971), *rev'd* 386 Mich 774 (1972); *People v Thomas,* 26 Mich App 160 (1970), *rev'd* 386 Mich 773 (1972).

[2] *Ibid.*

troit Recorder's Court for a new trial. Finding several of defendant's remaining allegations of error to be meritorious, we offer the following discussion to prevent their repetition upon remand.

II. *Did the prosecution submit sufficient evidence of due diligence to justify the nonproduction of a res gestae witness?*

The question of the people's "due diligence" was submitted by the trial judge to the jury for resolution. Although such questions are generally decided by the trial judge, such disposition by the jury is a proper alternative method. *People v Stephen,* 31 Mich App 604 (1971); *People v Howard,* 24 Mich App 328 (1970); *People v Kern,* 6 Mich App 406 (1967).[3] But let us caution that this approach presupposes the existence of sufficient evidence upon the claim of "due diligence" to justify sending the question to it. Defendant's challenge is predicated upon a total absence of such evidence.

Defendant challenged the prosecution's failure to produce the driver of the car who was arrested with defendant. The testimony offered by the prosecution to establish a diligent effort to produce this res gestae witness at trial is conspicuously inadequate. Although the testifying officer thought that a subpoena was issued, he did not know if it was served and the absence of its return in the court file led him to assume that it had not been served. The efforts to secure the attendance of this witness were not begun until the day of trial. Officers were

---

[3] *Cf. People v Ivy,* 11 Mich App 427 (1968) (where the Court approved the procedure in which the question of due diligence was submitted to the jury) and *People v Todaro,* 253 Mich 367 (1931), aff'd *on rehearing* 256 Mich 427 (1932) (where the Court accepted the trial judge's instruction submitting the question of due diligence to the jury).

sent to the address of the witness provided at the time of arrest and found it vacant. Subsequently, the desk clerk at the Wayne County Jail was contacted to determine whether the witness was presently incarcerated. The people's efforts were concluded by a telephone call to the Detroit Police Department's identification bureau to determine whether the witness was previously or presently in custody.

A positive burden to produce all res gestae witnesses is imposed upon the people to protect defendant from false accusations and preserve his presumption of innocence. *People v Kayne,* 268 Mich 186 (1934); *People v Russell,* 27 Mich App 654 (1970); *People v Dickinson,* 2 Mich App 646 (1966). Our close scrutiny of the people's reliance upon the concept of due diligence to excuse such production guarantees the integrity of our judicial system. In *People v O'Dell,* 10 Mich App 87, 94–95 (1968), the Court found that "mere service of a subpoena does not constitute due diligence", stating:

"The prosecutor must not only issue subpoenas, but he must also use 'other means at hand' to produce endorsed witnesses."

The present case fails to satisfy this language since the record neither provides evidence of the service of a subpoena or the bona fide use of "other means at hand". More recent rulings of this Court relying upon *Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968), would measure the prosecution's efforts to produce a res gestae witness by its "good faith". *People v Herman Brown,* 38 Mich App 69, 74 (1972); *People v Hairston,* 37 Mich App 65, 74 (1971). The present inadequate and untimely effort by the prosecution

to locate the witness at the day of trial cannot satisfy this "good-faith" standard.[4] In this absence of *any* evidence substantiating the people's diligent or good-faith effort to produce the only non-policeman eyewitness, the trial judge committed reversible error by submitting the question of "due diligence" to the jury.[5]

III. *Did the trial judge err in refusing to suppress a package of heroin as the fruits of an illegal arrest?*

This alleged error is based upon a claim that defendant was arrested in the absence of probable cause at the time he was confronted by the police officers. The concept of arrest pursued by the courts of this state flows from the following definition adopted from 4 Am Jur, Arrest, § 2, p 5:

" 'An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party

---

[4] *Cf. People v Nieto,* 33 Mich App 535 (1971) (where the Court held that the people's efforts consisting of a few telephone calls to the witness's family and delivery of a subpoena to the Adrian Police Department was inadequate compliance with the "good-faith" standard); *People v Barker,* 18 Mich App 544 (1969) (where the Court found that a belated attempt to subpoena a witness by which time the given address was useless, not followed by further attempts, was completely insufficient); *People v McIntosh,* 34 Mich App 578 (1971), *leave granted* 386 Mich 762 (1972) (where Judge Levin in his dissenting opinion would find the people's single telephone call to a sister state's police officials between July 23 and October 29 inadequate).

[5] This disposition conforms to the Court's statement in *People v Herman Brown,* 38 Mich App 69, 76 (1972) that: "This issue could not be determined by the jury because there was *absolutely no showing by the prosecuting attorney that he had exerted any diligence or good-faith effort to secure the presence of the witness at trial."* (Emphasis added.)

arrested.'" *People v Gonzales,* 356 Mich 247, 253 (1959).[6]

The police officers in the present case pulled alongside the car in which defendant was a passenger stating we "would like to talk to you". The officers' conduct clearly restrained defendant's freedom of movement and may be deemed a seizure, which is a primary element of an arrest. However, the degree, type, and purpose of the restraint will determine whether the conduct at issue constituted an arrest requiring the existence of probable cause.

The Supreme Court in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), recognized that not every restraint of a citizen by a police officer constitutes an arrest. This principle was based upon the policy consideration that the police investigatory process is an indispensable function which necessarily outweighs minor intrusions into a person's right of privacy. It is this investigatory process which constitutes the "stop" portion of the *Terry* Court's "stop and frisk" rule and is distinguished from an arrest dependent upon the existence of probable cause. Case law interpreting this rule has further articulated its application to investigatory detentions. In *Youngblood v State,* 47 Ala App 571; 258 So 2d 913 (1972), the Court recognized a police officer's right to stop a vehicle to investigate information supplied regarding criminal activity.[7] The Court in *United States v James,* 147 App DC 43; 452 F2d 1375 (1971), was confronted with circumstances analogous to the pres-

---

[6] *Accord, People v Woods,* 16 Mich App 718, 720 (1969); *Bruce v Meijers Supermarkets, Inc,* 34 Mich App 352, 356 (1971).

[7] See, *e.g., State v Garcia,* 83 NM 490; 493 P2d 975 (1972), *cert den* 83 NM 473; 493 P2d 958; *Davis v United States,* 284 A2d 459 (DC App, 1971); *People v Gravatt,* 22 Cal App 3d 133; 99 Cal Rptr 287 (1971); *Onofre v State,* 474 SW2d 699 (Tex Crim App, 1972).

ent case. There the police received information
from an informant that two men would leave a
specific address with narcotics. The police pro-
ceeded to the described address and observed two
men enter a taxi. After stopping the taxi they
requested the driver to produce his license and
registration and step out of the vehicle. During
this process the defendant-passenger pointed a
weapon at the officer but was arrested. The *James*
court rejected defendant's challenge to his convic-
tion of assault with a dangerous weapon because
his arrest was not supported by probable cause.
The *James* court reaffirmed the police officers'
right to stop persons for investigatory purposes,
indicating that the failure to do so would have
been a clear dereliction of their duties.

We find the police conduct in the instant case to
fall within the purview of these authorities. They
possessed information describing the defendant's
involvement in criminal activity, his appearance
and location. This information was sufficient to
justify defendant's restraint for investigatory pur-
poses short of an arrest.[8] *People v Bommarito,* 25
Mich App 668 (1970); *People v Wade,* 23 Mich App
132 (1970). The officers' simple request to talk to
defendant did not exceed this investigatory stage
and cannot be deemed an arrest.[9] Since the officers
had a right to stop defendant for questioning, the
narcotics thrown out of the window were in "plain
view" and admissible at trial. *People v Tisi,* 384
Mich 214 (1970). The trial judge correctly ruled

---

[8] See *United States v Blackstock,* 451 F2d 908, 910 (CA 9, 1971)
(where the court held that "to justify an investigatory stop short of an
arrest 'a founded suspicion is all that is necessary, some basis from
which the court can determine that the detention was not arbitrary
or harassing.' ").

[9] *Cf. People v Charles Wilson,* 27 Mich App 171, 176 (1970) (where
the Court held that the phrase "hold it" shouted by a police officer to
the defendant did not constitute an arrest).

upon this matter and defendant's allegation is devoid of merit.

IV. *Did the trial judge err in failing to permit defendant's cross-examination upon the police officers' intent to arrest him?*

The officers' intention is a significant factor to be considered in determining whether a particular accosting is an arrest. *Bonkowski v Arlan's Department Store,* 383 Mich 90 (1970); *People v Gonzales, supra.* In this event, the defendant would clearly have a right to cross-examine the officer with regard to his intention. However, our prior discussion indicates that the present case does not involve circumstances in which an allegation of arrest could be argued. The trial judge properly refused to consider the question of intention since the facts reveal a valid investigatory "stop".

V. *Did the trial judge erroneously instruct the jury that reasonable doubt may not be based upon the lack or unsatisfactory nature of the evidence?*

In *People v Davies,* 34 Mich App 19 (1971), we considered a substantially similar jury instruction and found it erroneous. As in *Davies,* the present defendant did not object to the instruction as given and reversal of his conviction is based upon other grounds. Our acknowledgment of *Davies* is offered to prevent a repetition of its error upon retrial.

VI. *Did the trial judge erroneously instruct the jury that any quantity of narcotics was sufficient to support a conviction?*

The error of this charge was recognized by the Court in *People v Harrington,* 33 Mich App 548 (1971). The *Harrington* Court enumerated a new rule governing this area by holding that a conviction for the possession of narcotics could be sup-

ported if the amount of heroin discovered could reasonably be inferred to be "a remnant of a larger, usable amount". Applying this rule to the "minute residue of heroin" discovered, the *Harrington* Court reversed the defendant's conviction. The quantity discovered in the present case totaled 24 grains of bulk heroin. We find that this amount satisfies the *Harrington* standard and falls within the purview of the more recent case of *People v Jones,* 38 Mich App 512 (1972). Since the present quantity of heroin was clearly a usable amount, the jury instruction given below did not constitute reversible error. Repetition of this instruction should be avoided upon remand.

Defendant's conviction is reversed and the case remanded for a new trial consistent with this opinion.

Reversed and remanded.

McGREGOR, J., concurred.

J. H. GILLIS, P. J. *(concurring).* I concur with the majority opinion in Part I, and agree that a reversal with a remand for a new trial is required.

I disagree with Part V and find no error in the trial judge's instructions.