PEOPLE v JOHNSON

1. Criminal Law—Witnesses—Credibility—Cross-Examination—
Impeachment—Prior Arrest.

In the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial and, even absent a timely objection, the improper use of an arrest record to impeach the credibility of a witness is reversible error.

2. Criminal Law—Evidence—Photographs—Admissibility.

Photographs that are merely calculated to arouse sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions; if photographs which disclose the gruesome aspects of an accident or crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence.

3. Criminal Law—Witnesses—Res Gestae—Failure to Produce—
Due Diligence.

A prosecutor is duty bound to produce at trial the res gestae witnesses whom he has indorsed on the information, but he may be excused from producing them if due diligence is shown in attempting to produce them, and when due diligence is not shown in the prosecutor's failure to produce res gestae witnesses a reversal is normally required.

4. Criminal Law—Witnesses—Res Gestae—Failure to Produce—
Due Diligence.

Due diligence in attempting to produce a res gestae witness was

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law §§ 333, 334, 336, 337, 343, 344.
[2] 21 Am Jur 2d, Criminal Law § 369.
[3–6] 29 Am Jur 2d, Evidence §§ 708, 713.

not shown where it took the police until the third day of a trial to find out that a res gestae witness had moved from the address he had given at the time of the crime.

5. CRIMINAL LAW—WITNESSES—RES GESTAE—PRODUCTION—BURDEN.

The positive burden to produce all res gestae witnesses is imposed upon the people to protect the defendant from false accusations and preserve his presumption of innocence; the obligation of res gestae witness production is a derivative of a defendant's right to a fair trial and his right to demand prosecutorial proof of his guilt beyond a reasonable doubt.

6. CRIMINAL LAW—WITNESSES—RES GESTAE—PRODUCTION—DILIGENCE.

Diligence in a prosecutor's attempt to produce a res gestae witness means a devoted and painstaking application to accomplish the undertaking.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted Division 3 December 4, 1973, at Grand Rapids. (Docket No. 15062.) Decided January 15, 1974.

Donald F. Johnson was convicted of first-degree murder. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Daniel R. Connell,* Assistant Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for the defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and McGREGOR, JJ.

HOLBROOK, J. Defendant was tried before a jury and found guilty of first-degree murder in the shooting death of one Edward Cox on October 10, 1971. Cox was shot through a closed door while

going up the stairs from the gambling part to the bar part of an illegal drinking and gambling establishment. The defendant now appeals as of right.

During cross-examination of Ollie Lee Sangster, a witness called by the defendant, the following colloquy took place:

> "*Q. (Mr. Webber, prosecutor):* And you were arrested and convicted of manslaughter in this county?
> "*A.* But I came back on appeal, and brought it down to felonious assault, and they give me time served.
> "*Q.* And you're now facing trial on two counts of felonious assault?
> "*A.* Yes. * * *
> "*Q.* Now you said you had some fights with Mr. Cox? Tell us about that.
> "*A.* Well, right after this incident, me and him had the, like I—argument about him searching me—
> "*Q.* —That argument resulted in your arrest for armed robbery?
> "*A.* I wasn't arrested for armed robbery, wasn't charged with armed robbery—."

Although defense counsel did not object to this line of questioning, we are constrained to hold that it was reversible error. In *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193, 199 (1973) the Supreme Court stated the rule binding on us here:

> "We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial."

The Court in *Falkner* reversed the conviction of the defendant where two of his alibi witnesses were questioned about prior arrests on higher

charges than those to which the two witnesses eventually pled guilty. The reversal came even though no objection was made at trial by the defendant's counsel to the questions. Most recently, in *People v Rappuhn,* 390 Mich 266; 212 NW2d 205 (1973), the Supreme Court reversed a conviction where the defendant had been impeached by improper reference to his arrest record. While the Supreme Court in *Rappuhn* noted that timely objection was made to the improper impeachment, it reaffirmed the *Falkner* case, and thus preserved the holding that even absent timely objection the improper use of an arrest record to impeach the credibility of a witness is reversible error. (For criticism of this rule on a different but related issue, see the dissenting opinion of Justices BRENNAN and COLEMAN in *Rappuhn.)* Thus, defendant's conviction must be reversed and remanded for a new trial.

While our treatment of the above issue resolves this case, two other issues raised by the defendant on appeal are worthy of discussion in order to avoid errors on retrial.

First, defendant objects to the introduction of a black and white picture of the deceased's partially draped body laying on a table face up with a small bullet hole through the chest. The objection was also timely raised below. The prosecutor justified the admissibility of the picture in the trial below by arguing that the picture would show the bullet hole. The trial judge found that the picture was not inflammatory and that it would be relevant to the issue of the path of the bullet. The test for the admissibility of such pictures was stated in *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297, 301 (1972):

"Photographs that are merely calculated to arouse

the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence." 29 Am Jur 2d, Evidence, § 787, pp 860–861.

This test was reaffirmed in *Falkner, supra,* 389 Mich at 685; 209 NW2d at 194. We note that while the angle of the bullet was an issue in the trial below, this picture, while not in our minds inflammatory, cannot be reasonably seen as tending to show the angle of the bullet, and therefore it is not "substantially necessary or instructive to show material facts or conditions". On retrial, therefore, the picture should be dealt with cautiously and should not be admitted into evidence unless it is somehow shown to be necessary or instructive under the *Eddington* rule.

The second issue we need discuss is whether the prosecutor improperly failed to produce at trial two alleged res gestae witnesses, a Mr. Kemp and a Mr. Henderson, both of whom had been indorsed on the information. When the trial court queried the prosecutor what these two witnesses would have testified to, the following colloquy took place:

"*The Court:* And what would Mr. Kemp have testified to?

"*Mr. Webber:* To the best of my knowledge, he was in the crap room area at the time. The same for Mr. Henderson.

"Is this correct, Detective Washington?

"*Detective Washington:* No, he said he was on the outside and heard the shots.

"*The Court:* Did he see anything that happened, do you remember, Officer?

"*Detective Washington:* Only that he heard the shot. This is all he told me.

"*The Court:* This was Henderson?

"*Detective Washington:* Kemp and Henderson. They was together."

The defendant's counsel asked that both witnesses be produced, and then moved for a mistrial for failure to produce the indorsed witnesses. He stated that his client thought both witnesses were in the barroom when the shooting occurred. The trial court gave the prosecutor one more day to try to locate the witnesses. When Detective Washington was asked for the first time by the prosecutor if he had been able to serve Kemp with a subpoena, his reply was simply that, "I wasn't able to find him". The third day of the trial when Detective Washington was asked what had happened since the opening day of the trial, he testified that he had given the subpoenas for the two witnesses to the Saginaw City Police Department the day before but that the patrol division had not been able to make the service and had discovered that apparently Kemp had moved. Defense counsel then renewed his objection. Detective Washington once again testified that Kemp had told him that he and Henderson had been outside when the shooting occurred and that they ran in during the commotion. Defense counsel then read from the transcript of the preliminary examination, which indicated that Washington had testified that Henderson was in the bar portion of the establishment when the shooting occurred. Despite this inconsistency in Detective Washington's testimony, the trial court denied defendant's motion for a mistrial.

By indorsing the name of a res gestae witness on the information, the prosecutor becomes duty bound to produce him at trial, but may be excused from producing him if "due diligence" is shown in attempting to produce him. *People v King,* 32 Mich App 167; 188 NW2d 169 (1971); *People v Hairston,* 37 Mich App 65; 194 NW2d 504 (1971); *People v Eugene Harris,* 43 Mich App 531; 204 NW2d 549 (1972); *People v Woodward,* 21 Mich App 549; 175 NW2d 842 (1970); *People v Barker,* 18 Mich App 544; 171 NW2d 574 (1969). When due diligence is not shown in the prosecutor's failure to produce a res gestae witness a reversal is normally required. *People v Tann,* 326 Mich 361; 40 NW2d 184 (1949); *Eugene Harris, supra; People v Blazenzitz,* 212 Mich 675; 180 NW 370 (1920). We do not believe due diligence was shown here when it took the police until the third day of the trial to find out that the witness Kemp had moved from the address he had given at the time of the crime. In *Barker, supra,* this Court found a lack of due diligence when the prosecution failed to produce the indorsed witnesses because the police relied on obsolete addresses and because no further effort to locate the witnesses was made. See, also, *Eugene Harris, supra.* The attempted showing of "due diligence" in defendant's trial here is at least as weak as that made in *Barker, supra.* It has been said that the positive burden to produce all res gestae witnesses is imposed upon the people to protect the defendant from false accusations and preserve his presumption of innocence. *Eugene Harris, supra; People v Kayne,* 268 Mich 186; 255 NW 758 (1934). In essence, the obligation of res gestae witness production is derivative of a defendant's constitutional right to a fair trial and his right to demand prosecutorial proof of his guilt beyond a reasonable doubt. For these reasons "dili-

gence" means literally what Webster's dictionary says it means: devoted and painstaking application to accomplish an undertaking. The trial court suggested that there was no evidence before the court to show that either one of the two witnesses could add anything to the information before the court, but in light of Detective Washington's inconsistent testimony, we must disagree. Their testimony might indeed clear up some of the evidentiary discrepancies.

For guidance in ruling on the admissibility of evidence concerning silence of the defendant when questioned about facts of the crime or surrounding conditions, see *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

Reversed and remanded for a new trial.

All concurred.