PEOPLE v PHILLIPS

1. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFRONTATION—CROSS-
EXAMINATION.

Adequate opportunity on the part of defense counsel to cross-
examine adverse witnesses is a key factor in the Sixth Amend-
ment right of confrontation.

2. CRIMINAL LAW—TESTIMONY OF PRIOR PROCEEDINGS—ADMISSIBILITY
—CONFRONTATION—WITNESSES—AVAILABILITY—CROSS-EXAMI-
NATION—GOOD-FAITH EFFORT—PROSECUTORS.

A witness's testimony against a defendant at previous judicial
proceedings may be admitted against the defendant at trial,
under the exception to the confrontation requirement, where
the witness is unavailable and his testimony was subject to
cross-examination; for a witness to be unavailable, the prosecu-
tion must show that it has made a good-faith effort, and used
due diligence to obtain the presence of the witness.

3. CRIMINAL LAW—WITNESSES—ABSENT WITNESSES—PROSECUTORS—
DUE DILIGENCE—DISCRETION.

The question whether a prosecutor has exercised due diligence in
attempting to produce an absent witness is a matter within the
discretion of the trial court; the court's decision will be over-
turned on appeal only when a clear abuse of that discretion is
shown.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 335, 336.

[2, 3] 21 Am Jur 2d, Criminal Law §§ 343, 344.
Use in criminal case of testimony given on former trial, or prelimi-
nary examination by witness not available at present trial. 159
ALR 1240.
Mode of proof of testimony given at former examination, hearing,
or trial. 11 ALR2d 30.
Claim of privilege by a witness as justifying the use in criminal
case of his testimony given on a former trial or preliminary
examination. 45 ALR2d 1354.

[4] 29 Am Jur 2d, Evidence §§ 723, 724.

[5, 6] 41 Am Jur 2d, Indictments and Informations §§ 55, 56, 60.

[7] 75 Am Jur 2d, Trial §§ 919–922.

[8] 58 Am Jur 2d, New Trial § 56. 75 Am Jur 2d, Trial § 192.

4. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES.

Res gestae witnesses include not only eyewitnesses but also a witness whose contact with the defendant is reasonably contemporaneous with the crime and whose testimony tends to show the state of mind with which a criminal act was done.

5. CRIMINAL LAW—INDORSEMENT OF WITNESSES—STATUTES.

The purpose of the statute requiring the prosecution to indorse on the information all witnesses known at the time of its filing is to protect defendants from false accusations by requiring disclosure of the whole of the res gestae, by preventing the suppression of testimony favorable to the accused, and by extending to them the benefits of cross-examination (MCLA 767.40).

6. CRIMINAL LAW—INDORSEMENT OF WITNESSES—ACCOMPLICES—RES GESTAE WITNESSES—FORMAL CHARGES—CONVICTION.

Accomplices are not res gestae witnesses who are required to be indorsed by the prosecution; a person may be treated as an accomplice even though not formally charged and convicted of the crime.

7. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—IMPROPER STATEMENTS—PRESERVING QUESTION—MANIFEST INJUSTICE—STATUTES.

Failure of defense counsel to request a curative instruction, after a witness at trial implied that the defendant had a criminal record, precludes appellate review in the absence of manifest injustice (MCLA 768.29).

8. APPEAL AND ERROR—CRIMINAL LAW—PROSECUTORS—PREJUDICIAL REMARKS—PRESERVING QUESTION—MISCARRIAGE OF JUSTICE.

Failure to object to allegedly prejudicial remarks made by a prosecutor during closing argument precludes appellate review unless the failure to consider the issue would result in a miscarriage of justice.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 February 10, 1975, at Detroit. (Docket No. 18521.) Decided May 27, 1975.

Steven M. Phillips was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Barry Resnick,* Assistant Prosecuting Attorney, for the people.

*Lawrence R. Greene,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, P. J. Defendant, Steven Marshall Phillips, was convicted of armed robbery, in violation of MCLA 750.529; MSA 28.797. Defendant appeals as of right.

The complainant, Ronald Sowder, testified that on February 11, 1973, he was "watching" the apartment of his friend Randy Peters; also present were George Tizedes and Stephanie Stoicoff, both of whom lived across the hall from Peters. Mr. Sowder said that he was acquainted with the defendant, having seen him with one Brenda Kohsmann at Peters' apartment earlier that same evening along with George Tizedes and John Cassaday.

At approximately midnight, Mr. Sowder heard a knock at the door. When he answered it, he saw Brenda Kohsmann standing outside. He then opened the door farther and an unknown male stepped around the corner with a shotgun, and stuck it in his face. He was directed by this unknown figure to lie down on the floor and not to move. While he was on the floor, he could hear people coming in and taking the "stereo and things". The stereo was composed of four speakers, a turntable and an amplifier.

During the course of the robbery, Mr. Tizedes

and his girl friend, Stephanie, were lying on the couch. At first they were asleep, but when they awakened, the man with the shotgun told them to close their eyes and somebody threw a blanket over their heads. Sowder stated that he did not know exactly how many people were in the apartment besides himself, George and Stephanie, but that there were more than three.

At some point before the robbers left, they bound Sowder. He identified people's exhibits 1-A and 1-B, being two rolls of adhesive tape, that had been previously in the apartment, as the tape used to tie him. Sowder freed himself after the intruders left, and took the blanket off George and Stephanie. Thereafter, Sowder and Tizedes drove to Manchester, Michigan, to contact Randy Peters who was on a camping trip. After Mr. Peters came back, the police were notified of the robbery.

Mr. Tizedes testified to basically the same facts as Mr. Sowder. Stephanie Stoicoff concurred in the events of February 11, 1973, at Peters' apartment.

A co-defendant, Gary Steven Cole, testified for the people. Mr. Cole stated he probably saw the defendant, Phillips, at Stacey's Bar on the night in question. Also present were Brenda Kohsmann and Donald Wells, another co-defendant. Cole was riding with an unknown person after they all left the bar. The car in which Cole rode stopped in front of 15795 Garrison Lane, and the driver exited. Mr. Cole saw two people get out of another car and walk into the apartment house with the driver of the car. He stated that the two people could have been Brenda Kohsmann and the defendant, Marshall Phillips, but that the reason he told the police it was Marshall Phillips was because his sister told him that name. He went inside the apartment house because someone

waved him to come inside.. When he entered Peters' apartment, he discovered the driver of the car with a shotgun over someone's head. Mr. Cole said the man with the shotgun directed him to get the stereo.

Detective Laurence Lokuta, of the Southgate Police Department, testified that he went over to Peters' apartment to investigate the robbery. While he was in the apartment he recovered two items of physical evidence, *viz.,* the two rolls of adhesive tape, which were lying on the living room floor. These were transported to the Michigan State Police laboratory to be tested for fingerprints. On Monday, or Tuesday after the robbery, he spoke with Gary Cole. Mr. Cole named Donald Wells, Brenda Kohsmann and Marshall Phillips as participants in the robbery.

Detective Sergeant Merlin Mowery, of the police laboratory, who was an expert in fingerprint identification, testified that an examination of the rolls of tape sent to the laboratory by Detective Lokuta revealed the fingerprints of the defendant Marshall Phillips.

Both defendant and Detective John E. Henry testified at a *Walker*[1] hearing concerning the voluntariness of a statement made by defendant prior to the giving of *Miranda*[2] warnings. The trial judge ruled that he accepted Detective Henry's version as true which was to the effect that the defendant kept interrupting and giving the subject statement, before the officer could give complete warnings. Consequently, Detective Henry was allowed to repeat defendant's statement that his only part

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

in the crime was to take the stereo out of the room and take it to the car.

The people's last witness was to be Brenda Kohsmann. Miss Kohsmann was never produced by the prosecution. Defense counsel demanded a showing of unavailability. The trial judge ruled after a hearing that he was satisfied every effort had been made to bring Miss Kohsmann in court to testify, and since she was unavailable, her testimony at the preliminary examination could be read to the jury.

The reading of the preliminary examination testimony given by Miss Kohsmann indicated that on the night of February 11, 1973 she was at Stacey's Bar with Donald Wells and others. Brenda left the bar with Donald and Theresa Adhearn and went to Randy Peters' apartment to see if he was at home. Another person answered the door and told them that Randy was not there. Thereafter, they left and went over to a friend's house and stayed for about half an hour, and then went to Peters' apartment a second time. Miss Kohsmann's reason for going the second time was to "pull an armed robbery". She also stated that Steven Cole and Marshall Phillips were there. She said she did not remember what happened inside the apartment because she was "pretty high", but admitted taking some money while in the apartment. After leaving the apartment, she met Donald and Theresa in the car outside. She indicated Donald and Theresa drove her over to the apartment, and while driving, there was a discussion about the robbery.

At the close of the people's case, defense counsel made a motion for a directed verdict based upon his renewed objections to the court's ruling on the use of the preliminary examination testimony of

Brenda Kohsmann, and for failure of the people to endorse, or produce an alleged res gestae witness, Theresa Adhearn. The court denied the motion.

I

The defendant asserts that the trial court abused its discretion by determining that the prosecutor had shown due diligence in attempting to procure the attendance of the witness Brenda Kohsmann.

In *Barber v Page,* 390 US 719, 722; 88 S Ct 1318, 1320; 20 L Ed 2d 255, 258 (1968), the Supreme Court wrote:

"[T]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. *E.g., Mattox v United States* [156 US 237; 15 S Ct 337; 39 L Ed 409 (1895)], (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. See 5 Wigmore, Evidence, §§ 1395–1396, 1402 (3d ed 1940); C. McCormick, Evidence, §§ 231, 234 (1954)."

Thus, one of the key factors involved in the Sixth Amendment right to confrontation of adverse witnesses is an adequate opportunity on the part of defense counsel to cross-examine. See also *Pointer v Texas,* 380 US 400, 407; 85 S Ct 1065, 1069–1070; 13 L Ed 2d 923, 928 (1965).

For a witness to be unavailable for the purpose of exception to the confrontation requirement, the prosecution must show that it has made a good-

faith effort to obtain the witness's presence at trial. *Barber v Page, supra,* 390 US at 724–725; 88 S Ct at 1321–1322; 20 L Ed 2d at 260. See also *People v Nieto,* 33 Mich App 535, 538; 190 NW2d 579, 581 (1971). Thus, the prosecution must demonstrate to the satisfaction of the trial court that it, with due diligence and in good-faith, attempted to procure the attendance of the witness. See, for instance, *People v Hunter,* 48 Mich App 497, 503; 210 NW2d 884, 887 (1973), and *People v Johnson,* 51 Mich App 224, 230; 214 NW2d 713, 716 (1974). The question of due diligence is a matter within the discretion of the trial court and will be overturned by this Court only when a clear abuse of that discretion is shown. *People v Bersine,* 48 Mich App 295, 302; 210 NW2d 501, 505 (1973), and cases cited therein.

Here, after delays in waiting for the witness, a subpoena issued and was served through another police department. The following occurred:

*"The Court:* What is the status of Brenda Kohsmann?

*"Mr. McMahon [prosecutor]:* I had my office prepare a bench warrant for her arrest.

"Her mother called me and said that this girl was frightened to death, that she had been threatened.

*"Mr. McCann [defense counsel]:* Your Honor, I am going to object.

*"Mr. McMahon:* The judge asked me a question.

*"The Court:* I want to know what the story is on this. The jury has left.

"Go ahead.

*"Mr. McMahon:* She says she is frightened, has been threatened. She doesn't want to testify. Her mother admitted to me the earlier story that she was sick was fabricated to get her daughter off the hook from testifying.

"She told her daughter to come down here this after-

noon, and the daughter left the house and, of course, she is not here.

"*The Court:* Was she properly served with a subpoena?

"*Mr. McMahon:* Yes, your Honor, she was served by the Wyandotte Police Department.

"*The Court:* Do you have proof of service there before I issue the attachment? I need a proof of service before I issue the attachment.

"*Mr. McMahon:* We just get the subpoenaes and serve them.

"He says it was served to her by hand.

"*The Court:* Well, I am very willing to enforce subpoenaes but I have no power to issue a capias unless I have proof that the subpoena was properly served and she refused to respond.

"*Mr. McMahon:* I will put the officer on the stand.

"*The Court:* You didn't serve them, did you, officer?

"*Officer Lokuta:* No sir, I gave the subpoena to Detective Elliott, Wyandotte Police Department. I checked with Elliott on Monday. He stated to me that she had been served.

"I had my department go over to the house during the noon hour break, and, again, she was advised by the Wyandotte Police Department, was notified that she was on her way down here to court.

"*Mr. McMahon:* Her mother admitted to me that the girl had been served. Her mother said she was afraid the girl was going to get into trouble if she didn't come down here.

"*The Court:* In other words, what officer served her?

"*Officer Lokuta:* Detective Elliott, of the Wyandotte Police Department.

"*The Court:* And he informed you that he properly served the subpoena on her?

"*Officer Lokuta:* Yes, sir.

"*The Court:* And the subpoena called for her attendance when?

"*Officer Lokuta:* In the morning, at 9 a.m., your Honor.

*"The Court:* All right, if she hasn't appeared, I will issue the capias."

While service of the subpoena is not per se dispositive, it is certainly an important factor of consideration. *Cf. People v Eugene Harris,* 43 Mich App 531; 204 NW2d 549 (1972).

The trial judge considered contempt[3] against the witness and a show cause hearing was had. It was there disclosed that the witness had consciously attempted to not present herself to testify. Both the witness Kohsmann and her mother testified that the subpoena had been received. Moreover, during the course of trial it was obvious that the prosecutor and the police, and consequently the court, were under the impression that the witness was on her way to the court to testify on the basis of information given by her mother. When first she did not appear, the mother told the prosecutor that the daughter would appear later during the trial.

A review of the record in this case reveals numerous efforts on the part of the police and prosecutor to obtain the presence of the witness at trial. Any further recitation of these would be superfluous. The prosecutor demonstrated due diligence and good faith in the attempt and thus we cannot say that the trial court abused its discretion.

MCLA 768.26; MSA 28.1049 provides:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony cannot, for any reason, be produced at

---

[3] Which, in fact, did issue. A fine of $50 was levied, along with six months probation and conditions.

the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify."

The use of the preliminary examination testimony of the witness was proper.

## II

The defendant asserts that the failure to indorse Theresa Adhearn upon the information was reversible error as she was a res gestae witness.

In *People v Williams #2,* 45 Mich App 630, 635; 207 NW2d 180, 183 (1973), the Court wrote:

"While res gestae witnesses are frequently considered to be eyewitnesses, they are not necessarily so. The res gestae classification is not restricted to those who have personally observed the 'act in question. See *People v Etter,* 81 Mich 570 (1890); *People v Kayne,* 268 Mich 186; 255 NW 758 (1934); *People v Jelks,* 33 Mich App 425; 190 NW2d 291 (1971). Where, as here, a witness's contact with a defendant is reasonably contemporaneous with the crime and tends to show the state of mind with which a criminal act was done, that evidence comprises a part of the res gestae. The witness qualifies as a res gestae witness. *Maher v People,* 10 Mich 212 (1862); *People v Ake,* 362 Mich 134; 106 NW2d 800 (1961)."

The purpose of the statute, MCLA 767.40; MSA 28.980, providing for the indorsement of all witnesses, is to protect a defendant from false accusations by requiring disclosure of all the res gestae, by preventing the suppression of testimony favorable to the accused, and, thereby, extending to the accused the benefits of cross-examination. *People v Harrison,* 44 Mich App 578, 588; 205 NW2d 900, 907 (1973).

While Theresa Adhearn appears to have only

waited in the car while the robbery was being committed, there was testimony that she discussed the robbery with the others in the car. There is every reason to believe that she may well have been an accomplice. See, for instance, *People v Henderson,* 47 Mich App 53; 209 NW2d 326 (1973). A person may be treated as an accomplice, in respect to the res gestae rule, even though not formally charged and convicted of the crime. *People v Threlkeld,* 47 Mich App 691, 696; 209 NW2d 852, 855 (1973). Accomplices are not res gestae witnesses for purposes of indorsement. The ruling of the trial judge that she was not a res gestae witness was a correct ruling in view of the fact that she was definitely involved in the crime with the other persons committing the crime, and, therefore, an accomplice for indorsement purposes. See, generally, *People v Potts,* 55 Mich App 622, 626–627; 223 NW2d 96, 99 (1974).

## III

A Southgate police officer was presented by the prosecution to testify as to an incriminating statement made by defendant. The following occurred:

"*Q. [Mr. McMahon]:* Now, in connection with this case, Sergeant Henry, do you have occasion to come into contact with the defendant, Steven Marshall Phillips?

"*A.* That I did.

"*Q.* And did you have occasion to have a conversation with Mr. Phillips?

"*A.* That I did.

"*Q.* And do you recall when it was that you had this conversation with Mr. Phillips?

"*A.* Shortly before noon, March the 12th, this year.

"*Q.* Approximately one month after the robbery at Garrison in Southgate?

"*A.* Approximately.

"*Q.* And where did this conversation take place?

"*A.* In the bureau. Our bureau.

"*Q.* In your office?

"*A.* That's correct.

"*Q.* And who was present?

"*A.* Detective Lokuta and Sergeant Mowery were going in and out, and they were in the process of going to lunch, when I said I would process the defendant.

"*Q.* All right. And so it would have been yourself and Marshall Phillips?

"*A.* That's correct.

"*Q.* And the others were in and out?

"*A.* That's correct.

"*Q.* All right. And did Marshall Phillips come into your office?

"*A.* That he did.

"*Q.* And was there some conversation between yourself and Marshall Phillips?

"*A.* There was.

"*Q.* Will you tell us, please, what the conversation was?

"*A.* Well, the young man—if I may say to the jury—*I have known this young man for a period of years prior to this incident.* I have had dealings with the young man. I know him. I know his brothers." (Emphasis added.)

The defendant asserts that this introduced evidence implied that the defendant had a criminal record or had committed other offenses, that the prejudicial content of the statement erodes the very essence of the presumption of innocence every criminal defendant is enshrouded with throughout his trial; and, the failure of the trial judge to give a curative instruction constituted reversible error.

At the outset, we do not believe that this statement gave the implication that defendant had a

prior record. Further, no request for a curative instruction was made. In the absence of manifest injustice, this is sufficient to preclude appellate review. *Cf. People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974), *reh den.* This is not a case where the prosecutor expected the answer. *Cf. United States v Smith,* 403 F2d 74 (CA 6, 1968). Rather, the answer was gratuitous and not prejudicial to defendant. Thus, the failure to request the curative instruction precludes our review thereof, MCLA 768.29; MSA 28.1052, and no showing of manifest injustice has been made.

## IV

Defendant, finally, argues that a statement made by the prosecutor in his closing argument was prejudicially erroneous. The prosecutor said:

"You weigh all this evidence. Are you satisfied beyond a reasonable doubt that Marshall Phillips took part in it? And when Mr. McCann [defense counsel] has an opportunity to argue to you, I hope you will examine closely his statements, his argument, particularly concerning circumstantial type evidence. I mean, that is to say, evidence that doesn't involve the credibility or character of some witnesses.

"What is he going to tell you about this fingerprint? I am kind of curious myself to know what he is going to say as to the fingerprint. But keep in mind that argument of counsel is not evidence, but they should be used by you to help you weigh the evidence and help you develop the respective theories of both sides."

This statement was not objected to and this absence of objection also precludes appellate review unless this Court's failure to consider the issue would result in a miscarriage of justice. *People v*

*Pacely,* 51 Mich App 67, 71; 214 NW2d 561, 562–563 (1974).

The statement made herein was certainly less inappropriate than that made in the case of *People v Foster,* 51 Mich App 213, 218; 214 NW2d 723, 726 (1974), where the Court declined to reverse, citing *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973). We fail to see any prejudice arising from this statement.

Affirmed.