PEOPLE v SCHWARTZ

OPINION OF THE COURT

1. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—PROSPECTIVE APPLICATION.

The Supreme Court decision adopting the objective test of entrapment applies only to police conduct arising after that decision.

2. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—PROSECUTORS—NONPRODUCTION—DUE DILIGENCE.

A prosecutor has not demonstrated the necessary due diligence in attempting to locate a res gestae witness, where he sent an officer on two occasions to the witness's last known address, a boat house nearby, a local pool hall, a fire hall, and a few local restaurants, but where there was no attempt to talk to the witness's parents, no check of jails or hospitals, no attempt to talk to his friends or associates, and no apparent attempt to ascertain whether the witness had moved.

3. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—DUE DILIGENCE—GOOD FAITH.

Due diligence in a prosecutor's attempt to produce a res gestae witness means devoted and painstaking application to accomplish the undertaking and should not be equated with good faith.

4. WITNESSES—RES GESTAE WITNESSES—PRODUCTION—REMEDY—EVIDENTIARY HEARING—NEW TRIAL.

A new trial is the appropriate remedy for the unexcused nonproduction of a res gestae witness where an evidentiary hearing has already been conducted on the question of due diligence, the prosecution's efforts have been found wanting, and the testimony of the witness could not be merely cumulative.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts § 233 *et seq.*
[2, 3, 5, 6] 58 Am Jur, Witnesses § 3.
  21 Am Jur 2d, Criminal Law § 251.
  29 Am Jur 2d, Evidence §§ 180, 186.
[4] 58 Am Jur 2d, New Trial § 40.

DISSENT BY O'HARA, J.

5. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—DUE DILI-
   GENCE—ABUSE OF DISCRETION—INDEPENDENT REVIEW.

   *The appropriate test to be applied in determining whether there
   has been a sufficient showing of due diligence on the part of the
   state to excuse its failure to produce a res gestae witness is
   whether the trial judge clearly abused his discretion in deter-
   mining that there had been due diligence, and not by an
   independent review by the appellate court of the prosecutor's
   attempts.*

6. CRIMINAL LAW—PROSECUTORS—WITNESSES—RES GESTAE WITNESSES
   —DUE DILIGENCE.

   *The people are not required to conduct an exhaustive full-scale
   manhunt before the trial judge may, with good reason, make a
   permissible finding of due diligence by the prosecutor in at-
   tempting to locate a res gestae witness.*

Appeal from Recorder's Court of Detroit,
Thomas L. Poindexter, J. Submitted Division 1
April 10, 1975, at Detroit. (Docket No. 18615.)
Decided June 23, 1975. Leave to appeal granted,
395 Mich 794.

John J. Schwartz was convicted of delivering
heroin. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training and Appeals, and
*John C. Mouradian,* Assistant Prosecuting Attor-
ney, for the people.

*Theodore B. Sallen (Alvin C. Sallen,* of counsel),
for defendant.

Before: R. B. BURNS, P. J., and M. J. KELLY and
O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

M. J. KELLY, J. Defendant was charged with and convicted of delivering heroin, MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). He was sentenced to a prison term of 4 to 20 years and appeals.

Michigan State Police Officer Gerald Kotajarvi was the only witness to the transaction that testified. He said that on September 19, 1972, he went to defendant's home in the City of Detroit. He was accompanied and introduced by Don Cager, an informant who had arranged the meeting. Prior to this date, Officer Kotajarvi and defendant were not acquainted with each other.

Defendant asked the officer what he wanted. The officer said "a spoon" (a quantity of narcotics). Defendant said he didn't have any at his home. The three men thereupon left in Kotajarvi's car for the area of Theodore and St. Aubin in Detroit. Defendant entered a building and returned, saying he needed $25. He then went back in the building and eventually gave Mr. Kotajarvi six "nickel" ($5) bags of a substance that contained 1 to 1-1/2 percent heroin.

Defendant did not testify on his own behalf. He interposed the defense of entrapment.

On appeal, defendant claims that the trial court erred by instructing the jury on the subjective test of entrapment. It is claimed that the judge should have given defendant's requested instruction setting forth the objective test of entrapment.

The jury verdict was returned on May 3, 1973. On September 18, 1973, the Michigan Supreme Court decided *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). *Turner* adopted the objective test of entrapment for courts of this state. The question thus presented is whether *Turner* is to be applied retroactively. That precise question was faced in *People v Auer,* 393 Mich 667; 227 NW2d

528 (1975), where the court held that the objective standard of entrapment applied only to police conduct arising after the decisional date of *Turner.* Trial defense counsel is to be commended for his foresight in requesting an instruction that complied with what, four months later, became the law of this state. Nonetheless, the trial court correctly instructed the jury on the prevailing rule of law.

Defendant also claims that the trial court erred in excusing the nonproduction of Don Cager. The people admit that Mr. Cager was a res gestae witness who was indorsed and who the prosecutor attempted to produce. This Court said in the factually similar case of *People v Koehler,* 54 Mich App 624, 639; 221 NW2d 398, 406 (1974):

"If ever there were a case where the prosecution's failure to produce a res gestae witness at trial could result in a 'possible miscarriage of justice', this is it. Because defendant admitted delivery of heroin and LSD to Officer Huston, his only hope for acquittal rested on the defense of entrapment. Concerning that defense, what witness could be more vital than the informant who served as the liason between police and the defendant? Certainly Mrs. Stevens' testimony would have been crucial and perhaps decisive during the jury's deliberations with respect to the question of entrapment."

The people claim that they were excused from producing the witness because they made an adequate showing of due diligence in attempting to produce the witness. This state has long recognized that the prosecutor's duty has been discharged upon a showing of due diligence. *People v Gibson,* 253 Mich 476; 235 NW 225 (1931), *People v Kern,* 6 Mich App 406; 149 NW2d 216 (1967), *People v Johnson,* 51 Mich App 224; 214 NW2d 713 (1974).

During the course of the trial, a hearing was held on the question of due diligence. Officer Kotajarvi testified as to the nature of the prosecutorial efforts to secure the attendance of the witness informant.

According to the officer-witness, he and the prosecuting attorney were informed at the examination of defendant's desire that Cager be produced. The first attempt to find Cager occurred the Monday preceding trial. Kotajarvi went to Cager's last known address in Algonac. He knocked on the door and got no answer, so he went to the boat house behind Cager's home. When this proved fruitless, the officer went to a local pool hall and a fire hall and looked in a few local restaurants. The same routine was repeated during the course of the trial on May 2, 1973; this time, he talked to a few young people on the street where Cager had lived. The jury verdict was May 3rd.

No attempt was made to talk to Cager's parents because the officer thought, but was not sure, that they both worked. No attempt was made to check jails or hospitals. The officer did not check any courts or talk to Cager's friends and associates. No apparent attempt was made to ascertain whether Cager had moved.

In *People v Johnson, supra,* this Court noted that, " * * * '[due] diligence' means literally what Webster's dictionary says it means: devoted and painstaking application to accomplish an undertaking". In the instant case, the trial court found that the prosecution had used "good faith" in attempting to produce Cager. See *People v Eugene Harris,* 43 Mich App 531, 537; 204 NW2d 549, 553 (1972). We find that the trial court incorrectly equated good faith with due diligence.

Significantly, no serious attempts to locate Cager

were made between the time of the arrest and the
time of defendant's trial. Even then, the prosecu-
tion failed to follow the most promising leads, *i.e.,*
Cager's parents, friends and neighbors. The evi-
dence presented does not even satisfactorily show
that Cager lived at the Algonac address. It fails to
show that the prosecution seriously sought to dis-
cover the witness's present whereabouts, much less
that the prosecution endeavored with diligence
and in good faith to compel Mr. Cager's attend-
ance. The efforts here made were less than those
found inadequate in *People v Harris, supra, People
v Johnson, supra,* and *People v James,* 51 Mich
App 777; 216 NW2d 473 (1974). See also *People v
McIntosh,* 389 Mich 82; 204 NW2d 135 (1973), and
*People v Barker,* 18 Mich App 544; 171 NW2d 574
(1969).

Concerning the appropriate remedy, defendant
claims he is entitled to a new trial while the
prosecution, citing *People v Robinson,* 390 Mich
629; 213 NW2d 106 (1973), argues that remand for
an evidentiary hearing is appropriate. In *Robin-
son,* an evidentiary hearing was ordered "[i]n or-
der to prevent what might possibly be a useless
new trial, but also in order to avoid a possible
miscarriage of justice".

The *Robinson* remedy is inappropriate because
there no evidentiary hearing had been conducted;
here, one has. Consequently, this prosecution has
had an opportunity to set forth its efforts; no such
opportunity had been presented in *Robinson.* Here,
a reviewing court has had the opportunity to
assess the adequacy of the prosecutorial attempts;
there was no such record presented for appeal in
*Robinson.* In *Robinson,* it was claimed that the
testimony of the missing witness would be cumula-
tive; here, no such claim could persuasively be

made. Since an evidentiary hearing would be futile and would engender needless delay, it is not ordered.

Reversed and remanded for a new trial.

R. B. BURNS, P. J., concurred.

O'HARA, J. *(dissenting).* I respectfully dissent from my colleague's opinion as to the inadequacy of the efforts of the people to produce the informer witness in the instant case.

In Judge KELLY's opinion it is stated that "[h]ere, a reviewing court has had the opportunity to assess the adequacy of the prosecutorial attempts" (to produce the res gestae witness). That is not the appropriate test to be applied in determining whether there was a sufficient showing of "due diligence" on the part of the state to excuse its failure to produce the witness at trial. More accurately the question may be stated as being whether the trial judge clearly abused his discretion in determining that there had been due diligence to secure the presence of the res gestae witness. *People v Russell,* 27 Mich App 654; 183 NW2d 845 (1970), *People v Garcia,* 39 Mich App 45; 197 NW2d 287 (1972).

My examination of the record indicates that the police officer unsuccessfully attempted to contact the informer witness on more than one occasion and that he checked, *inter alia,* the witness' residence and adjacent boathouse in addition to visiting the fire hall and several local business establishments. Admittedly, the record-supported search does not rise to the level of a full-scale manhunt. Nor, in my view, need the people make such an exhaustive search before the trial judge may, with

good reason, make a permissible finding of due diligence.

In finality, I simply cannot say that the trial judge clearly abused his discretion in excusing the people from their burden of producing the res gestae witness under the circumstances herein.

I vote to affirm.